**Samuel SCOTT, Appellant,**

v.

**The STATE of Texas.**

**Nos. PD–1069–09, PD–1070–09.**

Court of Criminal Appeals of Texas.

Oct. 6, 2010.

---

**5.** *See id.* at 177 (Onion, P.J., concurring and dissenting).

**6.** Appellant's Brief at 15.

Donald H. Flanary, III, San Antonio, for Appellant.

Kevin Patrick Yeary, Asst. Crim. D.A., San Antonio, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

HOLCOMB, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The court of appeals held that two subsections of our harassment statute, Texas Penal Code § 42.07, were unconstitutionally vague on their face. We reverse.

On April 24, 2006, in Bexar County, Samuel Scott was charged by information with one count of harassment, a misdemeanor offense. The information alleged, in relevant part, that:

"on or about the 5th Day of December, 2005, Samuel Scott, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did make repeated communications to the complainant, to wit: telephone calls, in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend the complainant."

On July 11, 2006, again in Bexar County, Scott was again charged by information with harassment. The information alleged, in relevant part, that:

"on or about the 12th Day of March, 2006, Samuel Scott, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to as complainant, did make repeated telephone communications to the complainant in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend the complainant, to wit: the defendant called the complainant repeatedly by telephone while intoxicated, late at night, leaving abusive and harassing voice mail messages."

 Sometime thereafter (the record does not reveal the exact date), Scott filed a motion to quash the two charging instruments. In his motion, Scott, citing both the First and Fourteenth Amendments to the United States Constitution, argued that Texas Penal Code § 42.07, the statute under which he was charged, was unconstitutional on its face [1] because it was both unduly vague and overbroad.[2] He argued further that the statute's vagueness and overbreadth threatened "to induce individuals to forgo [their] First Amendment rights [to free speech] for fear of violating an unclear law." Scott, citing our decision in *Long v. State*, 931 S.W.2d 285, 288 (Tex.Crim.App.1996), noted that "when [as here] a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even though it may not be unconstitutional as applied to the defendant's conduct." Notably, Scott did not argue that § 42.07 was vague as applied to his conduct, i.e., that the statute failed to give him a reasonable opportunity to know that the conduct for which he was charged was prohibited.[3]

---

1. A statute may be challenged as unconstitutional "on its face" or "as applied." A claim that a statute is unconstitutional "on its face" is a claim that the statute, by its terms, always operates unconstitutionally. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n. 2 (Tex.Crim.App.2006). A claim that a statute is unconstitutional "as applied" is a claim that the statute operates unconstitutionally with respect to the claimant because of his particular circumstances. *Id.* at n. 3.

2. A statute may be challenged as unduly vague, in violation of the Due Process Clause of the Fourteenth Amendment, if it does not: (1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and (2) establish definite guidelines for law enforcement. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App.1989). A statute may be challenged as overbroad, in violation of the Free Speech Clause of the First Amendment, if, in addition to proscribing activity that may be constitutionally forbidden, it sweeps within its coverage a substantial amount of expressive activity that is protected by the First Amendment. *Morehead v. State*, 807 S.W.2d 577, 580 (Tex.Crim.App. 1991).

3. Ordinarily, a criminal defendant who challenges a statute as unduly vague must show that it is vague as applied to the conduct for which he was charged. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Bynum v. State*, 767 S.W.2d 769, 774

On June 25, 2008, the trial court held a hearing on Scott's motion to quash. Neither Scott nor the State presented any evidence at that hearing. Just after the start of the hearing, Scott explained to the trial court that he believed that the April 24, 2006 information had been brought under Texas Penal Code § 42.07(a)(4), whereas he believed that the July 11, 2006 information had been brought under § 42.07(a)(7).[4] Toward the end of the hearing, Scott, when queried on the matter by the trial court, appeared to concede that both charging instruments had been brought under § 42.07(a)(4).

As for the substance of his motion to quash, Scott reiterated the arguments that he had made in his written motion. In addition, he argued that: (1) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague and overbroad on their face because the terms "annoy" and "alarm" included in

those statutory subsections were "inherently vague"; (2) neither statutory subsection clearly indicated "whose sensibilities must be offended"; (3) neither statutory subsection clearly indicated "the standard by which the [prohibited] conduct [was] to be assessed"; and (4) the specific intent elements included in the statutory subsections did not save them from vagueness.

The State, in response, did not address the merits of Scott's arguments. Instead, the State argued simply that "[t]here is no court that has any jurisdiction over this specific [trial] court that has ruled that specific statute to be unconstitutionally vague."

At the conclusion of the hearing, the trial court denied Scott's motion to quash. Shortly thereafter, Scott pled nolo contendere, pursuant to a plea bargain, to each harassment charge. The trial court then assessed Scott's punishment in each case

(Tex.Crim.App.1989). However, if the challenged statute implicates the free-speech guarantee of the First Amendment—i.e., if the statute, as authoritatively construed, is susceptible of application to speech guaranteed by the First Amendment—then the defendant is permitted to argue that the statute is overbroad on its face because it is unclear whether it regulates a substantial amount of protected speech. *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *Gooding v. Wilson*, 405 U.S. 518, 520–21, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). This exception to the usual rule is deemed justified since the otherwise continued existence of the statute in unnarrowed form would tend to suppress constitutionally protected rights. *Gooding v. Wilson*, 405 U.S. at 521, 92 S.Ct. 1103. In the cases before us today, Scott's argument, as we understand it, is that § 42.07 is overbroad on its face because its inherent vagueness makes it unclear whether it prohibits a substantial amount of protected speech.

Note: In this opinion, we use the word "speech" and the phrases "communicative conduct" and "expressive activity" interchangeably; in the First Amendment context, they mean the same thing.

4. Texas Penal Code § 42.07 provides, in relevant part:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

\* \* \*

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

\* \* \*

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

(b) In this section:

(1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system. The term includes:

(A) a communication initiated by electronic mail, instant message, network call, or facsimile machine; and

(B) a communication made to a pager.

at incarceration for two days and a $50 fine.

■ On direct appeal, Scott reiterated the arguments that he had made in the trial court. In addition, he argued, for the first time,[5] that: (1) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague as applied to his conduct (although he failed to explain *how* they were unconstitutionally vague as applied to his conduct); and (2) § 42.07(a)(4) and (a)(7) were both unconstitutionally vague and overbroad because the terms "abuse," "torment," "embarrass," and "repeated" included in those statutory subsections were "inherently vague." [6]

The State, in response to Scott's arguments, argued that: (1) both charging instruments tracked the language of § 42.07(a)(4) and charged Scott under that statutory subsection; (2) § 42.07(a)(4) was neither unconstitutionally vague nor overbroad; (3) § 42.07(a)(4) did not implicate the free-speech guarantee of the First Amendment; and (4) "the fact that [Scott] chose [in the trial court] not to challenge the statute as applied to [his conduct] constitute[d] a failure to preserve [that] issue for appellate review."

The court of appeals agreed with Scott's arguments, reversed the trial court's judgments, and rendered judgments of acquittal. *Scott v. State*, 298 S.W.3d 264 (Tex. App.-San Antonio 2009). More specifically, the court of appeals held that: (1) the July 11, 2006 information, which involved allegations of harassing voice-mail messages, could have been brought under § 42.07(a)(7) because voice mail messages fell within the statutory definition of "electronic communication"; (2) § 42.07(a)(4) and (a)(7) both implicated the free speech guarantee of the First Amendment;[7] and (3) the terms "annoy," "alarm," "abuse," "torment," "embarrass," and "repeated" contained in the two statutory subsections were all unconstitutionally vague.[8]

We granted the State's petition for discretionary review, which raised six grounds,[9] in order to determine whether

**5.** Scott's arguments, because they were untimely, were not preserved for appellate review. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex.Crim.App.2006); Tex.R.App. Proc. 33.1.

**6.** In the court of appeals and in this Court, Scott relies primarily upon *Kramer v. Price*, 712 F.2d 174 (5th Cir.1983), *reh'g en banc granted*, 716 F.2d 284 (5th Cir.1983), *grant of relief aff'd*, 723 F.2d 1164 (5th Cir.1984); *Long v. State*, 931 S.W.2d 285 (Tex.Crim.App. 1996); *May v. State*, 765 S.W.2d 438 (Tex. Crim.App.1989); and *Karenev v. State*, 258 S.W.3d 210 (Tex.App.-Fort Worth 2008), *rev'd on other grounds*, 281 S.W.3d 428 (Tex.Crim. App.2009). In none of those cases, however, did the court address the primary question that we address today: whether § 42.07(a)(4), as currently written, implicates the free speech guarantee of the First Amendment.

**7.** The court of appeals explained this particular holding as follows:
"We hold that subsections (a)(4) and (7) do implicate First Amendment freedoms. What is 'annoying,' 'embarrassing,' or even

'alarming' may be protected speech. For example, political calls made repeatedly during election season could fall under subsection (a)(4) if the caller is intending to alarm the recipient concerning a particular candidate. Further, we note that subsection (a)(7)'s 'electronic communications' could encompass some talk radio and television programming." *Scott v. State*, 298 S.W.3d 264, 269 (Tex.App.-San Antonio 2009).

**8.** *Scott v. State*, 298 S.W.3d 264, 267, 269, 270 (Tex.App.-San Antonio 2009).

**9.** The State's petition covers both cases. The State's grounds read as follows:
(1) Are subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 unconstitutionally vague?
(2) Do subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 implicate the First Amendment to the United States Constitution?
(3) Are the term "repeated" and the phrase "in a manner reasonably likely to harass,

the court of appeals erred in its analysis. *See* Tex.R.App. Proc. 66.3(d).

We turn first to the State's fourth ground for review, in which the State argues that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7). The State argues that, contrary to the court of appeals's conclusion, the July 11, 2006 information against Scott charged him under § 42.07(a)(4), not (a)(7).

A careful reading of the July 11, 2006 information, which we quoted earlier, reveals that it tracks the language of § 42.07(a)(4), which we also quoted earlier, but not the language of (a)(7). Furthermore, the text of (a)(4) suggests that it covers ordinary voice (and therefore voice mail) communication involving an ordinary telephone, whereas the text of (a)(7) suggests that it covers various types of non-telephonic, "electronic" communication, e.g., e-mail, instant message, etc. Therefore, we conclude that the July 11, 2006 information against Scott was brought under § 42.07(a)(4) and that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7). We sustain the State's fourth ground for review.

■ We turn next to the State's second ground for review, in which the State argues that the court of appeals erred in concluding that § 42.07(a)(4) implicated the free-speech guarantee of the First Amendment. The question of whether the statutory subsection implicates the free-

speech guarantee is important in the cases before us, because if the statutory subsection *does* implicate the free-speech guarantee, then Scott, in making his vagueness challenge, is relieved of the usual requirement of showing that the statutory subsection was unduly vague as applied to his conduct. *See* footnote three, *supra.*

■ To answer the question of whether § 42.07(a)(4) implicates the free-speech guarantee of the First Amendment, we must first determine the protection afforded by the free-speech guarantee, and then we must determine the meaning of § 42.07(a)(4). The First Amendment provides, in relevant part, that "Congress shall make no law ... abridging the freedom of speech." This guarantee of free speech, which was made applicable to the various states by the Due Process Clause of the Fourteenth Amendment, *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925), generally protects the free communication and receipt of ideas, opinions, and information, *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). In a nation of ordered liberty, however, the guarantee of free speech cannot be absolute. The State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial pri-

annoy, alarm, abuse, torment, embarrass, or offend another," which are both contained within Texas Penal Code § 42.07(a)(4) and (a)(7), unconstitutionally vague?
(4) Did the State's allegation that appellant left "voice mail messages" implicate Texas Penal Code § 42.07(a)(7) in this case, and does that phrase necessarily fall within the definition of "electronic communication" found at Texas Penal Code § 42.07(b)(1)?
(5) If some part of Texas Penal Code § 42.07 is unconstitutionally vague, did the

Court of Appeals err by declaring it vague and acquitting appellant instead of applying a narrow construction to the statute to avoid the alleged vagueness?
(6) Has the Court of Appeals improperly determined that because subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 allegedly implicate the First Amendment and might curtail protected speech those subsections are vague, when the proper question should have been whether the subsections are overbroad?

vacy interests of another in an essentially intolerable manner. *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).[10]

 Turning to the meaning of § 42.07(a)(4), we find that, given the allegations in the charging instruments, the relevant portion of (a)(4) reads as follows: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." We notice several things about that text.[11] First, the text requires that the actor have the specific intent to harass, annoy, alarm, abuse, torment, or embarrass the recipient of the telephone call. That is, the text requires that the actor have the intent to inflict harm on the victim in the form of one of the listed types

of emotional distress. Second, the text requires that the actor make repeated telephone calls to the victim; one telephone call will not suffice.[12] Third, the text requires that the actor make those telephone calls in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend an average person.[13] Fourth, the text does not require that the actor use spoken words.

Having examined the text of § 42.07(a)(4), we conclude that it is not susceptible of application to communicative conduct that is protected by the First Amendment. In other words, the statutory subsection does not implicate the free-speech guarantee of the First Amendment. The statutory subsection, by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so

**10.** *See* M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L.Rev. 1403, 1418 (1989) (The *Cohen v. California* "intolerability" standard is "useful [for] evaluating telephone harassment statutes.").

**11.** When we interpret a statute, our constitutional duty is to determine and give effect to the apparent intent of the legislators who voted for it. In determining this apparent legislative intent, we focus our attention on the text of the statute and ask ourselves, how would ordinary legislators have understood that text? *Whitehead v. State*, 273 S.W.3d 285, 288 (Tex.Crim.App.2008); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). We also presume that the legislators were aware of their constitutional obligations and intended a constitutional statute. *State v. Edmond*, 933 S.W.2d 120, 124 (Tex.Crim.App. 1996); 82 C.J.S. *Statutes* § 381 (2009).

**12.** The term "repeated" is commonly understood to mean "reiterated," "recurring," or "frequent." *Webster's Ninth New Collegiate Dictionary* 998 (1988); 2 *Oxford English Dictionary* 2494 (1971). Here, we believe that the Legislature intended the phrase "repeated telephone communications" to mean "more

than one telephone call in close enough proximity to properly be termed a single episode," because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition. *See* M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L.Rev. 1403, 1430 (1989) ("Prudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect the recipient becomes more compelling.").

**13.** The terms "harass," "annoy," "alarm," "abuse," "torment," "embarrass," and "offend" all have commonly understood definitions that are relevant in this context. "Harass" means "to annoy persistently." "Annoy" means to "wear on the nerves by persistent petty unpleasantness." "Alarm" means "to strike with fear." "Abuse" means "to attack with words." "Torment" means "to cause severe distress of the mind." "Embarrass" means "to cause to experience a state of self-conscious distress." "Offend" means "to cause dislike, anger, or vexation." *Webster's Ninth New Collegiate Dictionary* 47, 68, 88, 405, 552, 819, and 1245 (1988).

in a manner reasonably likely to inflict emotional distress. Given that plain text, we believe that the conduct to which the statutory subsection is susceptible of application will be, in the usual case, essentially noncommunicative, even if the conduct includes spoken words.[14] That is to say, in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake. To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.[15] We sustain the State's second ground for review.

Given our disposition of the State's second and fourth grounds for review, we need not reach the State's remaining grounds for review. We dismiss them.

■ Because § 42.07(a)(4) does not implicate the free-speech guarantee of the First Amendment, Scott, in making his

---

**14.** In *Jones v. Municipality of Anchorage*, 754 P.2d 275 (Alaska App.1988), the court addressed the constitutionality, under the First Amendment, of a city ordinance that read: "It is unlawful for any person to anonymously or repeatedly telephone another person for the purpose of annoying, molesting, or abusing through patently offensive and profane language, or harassing that person or his family." The court upheld the ordinance, explaining, in relevant part, that the ordinance "restrict[ed] speech only when it [was] essentially noncommunicative—in other words, only when the speech [was] devoid of any substantive information and [was] solely and specifically intended by the speaker to evoke an adverse emotional response from the listener." *Id.* at 279.

In *State v. Thorne*, 175 W.Va. 452, 333 S.E.2d 817 (1985), the court addressed the constitutionality, under the First Amendment, of a statute that read: "It shall be unlawful for any person to harass or abuse another by means of [a] telephone to ... [m]ake repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number." The court upheld the statute, explaining, in relevant part: "Prohibiting harassment is not prohibiting speech, because harassment is not speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with an intent to communicate are not prohibited." *Id.* at 819.

In *State v. Elder*, 382 So.2d 687 (Fla.1980), the court addressed the constitutionality, un- der the First Amendment, of a statute that read: "Whoever by means of telephone communication ... [m]akes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number ... shall be guilty of a misdemeanor." The court upheld the statute, explaining, in relevant part, that the statute was "not directed at the communication of opinions or ideas, but at conduct, that is, the act of making a telephone call or a series of telephone calls, without disclosing identity and whether or not conversation ensues, with the intent to annoy, abuse, threaten or harass the recipient of the call. That this conduct may be effected in part by verbal means does not necessarily invalidate the statute on freedom of speech grounds." *Id.* at 690.

**15.** In *State v. Smith*, 89 Misc.2d 789, 392 N.Y.S.2d 968 (App.Div.1977), the court addressed the constitutionality, under the First Amendment, of a statute that read: "[A person commits an offense] when, with intent to harass, annoy, threaten or alarm another person, he [c]ommunicates ... with a person, anonymously or otherwise, by telephone ... in a manner likely to cause annoyance or alarm." The court upheld the statute, explaining, in relevant part, that the statute "was intended to include ... communications which are directed to an unwilling recipient under circumstances wherein substantial privacy interests are being invaded in an essentially intolerable manner." Id. at 791, 392 N.Y.S.2d 968.

vagueness challenge [16] to that statutory subsection, was required to show that it was unduly vague as applied to his own conduct. He has not done that. Therefore, his vagueness challenge fails.

We reverse the judgments of the court of appeals and affirm the judgments of the trial court.

JOHNSON, J., filed a concurring opinion, in which COCHRAN, J., joined.

KELLER, P.J., filed a dissenting opinion.

MEYERS, J., did not participate.

JOHNSON, J., concurring opinion in which COCHRAN, J., joined.

Harassment, as defined in this statute, requires an intent to harass, annoy, alarm, abuse, torment, embarrass, or offend another in a manner reasonably likely to attain its goal; it does not require that the intended result actually occur. Because the intent is that of the speaker, that person must intend to do something that he or she believes would harass, annoy, alarm, abuse, torment, embarrass, or offend another and to do so repeatedly. While communication of some political view or expression of a personal opinion is protected speech, it is completed with one contact. If expressed to the same hearer repeatedly, such a "communication" may become harassment, as the pertinent information has already been communicated and no longer has a legitimate purpose.

I find it odd to divide the various actions into two groups based on the dubious distinction of being more or less "intense" emotionally. Why are "annoy," "alarm," "embarrass," and "offend" less

invasive of privacy than "harass," "abuse," and "torment"? Given the context, "alarm" is directed at the hearer's alarm over the possibility of personal harm, a reasonable reaction, not alarm that the neighbor is having an affair or that a candidate for mayor has purportedly converted to a religion that the hearer does not approve of. Some hearers might experience extremely emotional embarrassment from being publicly exposed as a liar. Other hearers might not be even unsettled by a threat of bodily injury. One has only to keep up with current events to view the emotional extremes to which some persons will go when they are "offended."

Harassment is in the mind of the speaker, not the hearer. The speaker who intends to harass, annoy, alarm, abuse, torment, embarrass, or offend another has himself defined, for that purpose, both the applicable term and the word "repeatedly." They are not vague or over-broad for the speaker; they are clearly and precisely known. There is no ambiguity of intent in the mind of the speaker, and intent undergirds the offense.

I join the opinion of the Court.

KELLER, P.J., dissenting.

I believe that parts of the harassment statute implicate First Amendment freedoms and that those parts violate the Constitution. I therefore respectfully dissent.

### A. Prior Texas Cases

Our decisions in *Long v. State*[1] and *May v. State*,[2] and the Fifth Circuit's decision in *Kramer v. Price*,[3] set the backdrop for the

16. As we explained in footnote three, supra, we understand Scott's argument to be that § 42.07(a)(4) is overbroad *because* it is inherently vague.

1. 931 S.W.2d 285 (Tex.Crim.App.1996).

2. 765 S.W.2d 438 (Tex.Crim.App.1989).

3. 712 F.2d 174 (5th Cir.1983), *rehearing en banc granted,* 716 F.2d 284 (5th Cir.1983), *grant of relief affirmed,* 723 F.2d 1164 (5th Cir.1984).

claim we now face.[4] These decisions invalidated statutes that contained the terms "annoy" and "alarm" as implicating First Amendment freedoms and being unduly vague.[5] In its opinion today, the Court's only attempt to distinguish these cases is to say that they involved different versions of the harassment statute than the one that is currently before us.[6]

But the harassment provision at issue in the present case is similar in pertinent ways to the stalking provision that we invalidated in *Long*. The part of the harassment statute at issue provides:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . makes repeated telephone communications . . . in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.[7]

The stalking provision in *Long* provided in relevant part:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . on more than one occasion engages in conduct . . . that is reasonably likely to

harass, annoy, alarm, abuse, torment, or embarrass that person.[8]

A comparison of these passages reveals only three features in the current statute that were not in the former stalking provision: (1) the use of "repeated" instead of "on more than one occasion," (2) the additional emotional state of "offend" in the current statute, and (3) the limitation of the current statute to telephone communications.

#### B. "Repeated"

The term "repeated" introduces an ambiguity not present with the "on more than one occasion" language in the former stalking statute. Is conduct "repeated" if it occurs twice? If the two occurrences are a year apart? Does it matter whether the circumstances show that the multiple instances of conduct are connected to the same scheme or course of conduct?[9] With respect to the facial constitutionality of a statute, this ambiguity may be acceptable if First Amendment considerations are absent. In many cases, it would be clear that a person's conduct was "repeated," so we could adjudicate on a case-by-case basis whether a particular person was afforded adequate notice under the statute.[10] But if First Amendment freedoms are at stake, we cannot allow the ambiguity in a statute to chill protected expression.[11]

---

4. *Long* analyzed a similar issue as a vagueness claim with First Amendment implications. The Supreme Court's opinion in *Holder v. Humanitarian Law Project*, —— U.S. ——, 130 S.Ct. 2705, 2718–19, 177 L.Ed.2d 355 (2010) (citing *United States v. Williams*, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008)), indicates that the proper analysis might be more appropriately characterized as a First Amendment overbreadth claim with a vagueness component. I analyze the issue in accord with *Humanitarian Law Project*, but the analysis is essentially the same.

5. *See Long*, generally; *May*, 765 S.W.2d at 440 (following and quoting *Kramer*, 712 F.2d at 178: "By failing to provide reasonably clear guidelines, § 42.07 gives officials unbounded discretion to apply the law selectively and subjects the exercise of the right of speech to an unascertainable standard.").

6. Court's op. at 667 n. 6.

7. Tex Penal Code § 42.07(a)(4).

8. *Long*, 931 S.W.2d at 288 (quoting the 1994 version of Tex. Penal Code § 42.07(a)(7)).

9. *See id.* at 291 (no nexus requirement in former stalking statute).

10. *See Williams*, 553 U.S. at 304, 128 S.Ct. 1830 (outside the First Amendment context, a person "who engages in conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

11. *Long*, 931 S.W.2d at 287; *Gooding v. Wilson*, 405 U.S. 518, 521, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (referring to the need to

The Court contends that we can read "repeated" to mean "more than one call in close enough proximity to properly be termed a single episode."[12] The Court fails to cite a single source, from a dictionary or otherwise, that limits "repeated" to actions in a single episode. Although a court has a general duty to employ "reasonable narrowing constructions" to avoid constitutional violations, it may not "assume the legislative prerogative and rewrite a statute" that is not "readily subject" to being narrowly construed.[13] Would once a day for a month constitute "a single episode?" Under any common understanding it would not, but it is hard to believe the Legislature did not intend to reach such conduct. As discussed below, the Legislature has a legitimate interest in proscribing conduct over the telephone that is intentionally harassing, abusing, and tormenting. In my opinion, that interest would legitimately extend to multiple instances of conduct that could not reasonably be considered part of a single episode.

### C. Offend

The term "offend" does nothing to obviate the concerns expressed in *Long.* We explained there that a person's intent to inflict a more intense emotional state than "annoy" might serve to take the First Amendment out of the picture.[14] But "offend" is no more intense an emotional state than "annoy" and "embarrass," which we concluded "probably describe the least

intense emotional states available under the [stalking] statute."[15]

### D. Telephone Communications

That leaves the remaining distinctive feature of the current harassment provision: the fact that it is limited to telephone communications. I agree with the Court that the First Amendment is not implicated when the "intent" and the "reasonably likely" effect of a person's conduct is to "harass," "abuse," or "torment." But I would hold that the First Amendment is implicated when the "intent" or "reasonably likely" effect of a person's conduct is to "annoy," "alarm," "embarrass," or "offend."

#### 1. *Binding Precedent*

In *Long,* we said that the terms "harass," "abuse," and "torment" carried a greater emotional intensity than "annoy" or "embarrass," though they still implicated First Amendment freedoms under the stalking statute.[16] The former stalking statute expansively covered "*any* conduct in which a person could possibly engage."[17] But the context in which the harassing conduct occurs can be important. Government can act, consistent with the First Amendment, to prevent "substantial privacy interests" from "being invaded in an essentially intolerable manner."[18] The State has the greatest leeway in regulating expression in favor of privacy

---

protect persons "who may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression").

12. Court's op. at 669 n. 12.

13. *Long,* 931 S.W.2d at 295.

14. *Id.* at 293.

15. *See id.* at 296. In addition, "offend" appears only in the second of the two lists of

emotional terms—relating to what emotional state the victim was "reasonably likely" to suffer. *See* TEX PENAL CODE § 42.07(a)(4). The statute does not have a corresponding requirement of intent to offend. *Id.,* § 42.07(a).

16. *Long,* 931 S.W.2d at 296.

17. *Id.* at 289 (emphasis in original).

18. *Cohen v. California,* 403 U.S. 15, 21, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

interests when it seeks to "prohibit intrusion into the privacy of the home."[19] At the same time, the Supreme Court has stressed that "we are often 'captives' outside the sanctuary of the home and subject to objectionable speech."[20] Telephone harassment under the current statute can sometimes occur in the home, but the statute does not limit it in that manner.

### 2. *Other Jurisdictions*

In *United States v. Bowker*, the Sixth Circuit addressed the constitutionality of the federal telephone harassment statute, which proscribed phone calls made by a person "without disclosing his identity and with intent to annoy, abuse, threaten, or harass."[21] The court identified two factors in upholding the constitutionality of the federal statute against a First Amendment overbreadth challenge.[22] First, the court explained that the federal statute focuses "not simply [on] annoying telephonic communications" but also prohibits "abusive, threatening or harassing communications."[23] Second, the court said, the statute operates in a more private realm in which the listener has to "deal with much more inconvenience to avoid" the unwanted speech, and the unidentified nature of the caller was more likely to instill fear in the listener and make it more difficult for the listener to confront the caller.[24]

The New Hampshire Supreme Court distinguished its state's telephone harassment statute from that in *Bowker* on two grounds: the state statute prohibited "all telephone calls placed with the intent to annoy or alarm" and it did not require anonymity.[25] The court found that the New Hampshire statute was not directed toward only those communications intended to instill fear in the victim, but instead swept far more broadly.[26] "Simply put," the court explained, "the First Amendment is made of sterner stuff."[27] The court concluded that the New Hampshire statute was overbroad because it covered a substantial amount of protected First Amendment speech, and there was a real likelihood that it might discourage citizens from exercising that speech.[28]

In *Galloway v. State*,[29] Maryland's court of last resort addressed the constitutionality of its harassment statute, which provided as follows:

a) Course of conduct defined.—In this section "course of conduct" means a persistent pattern of conduct, composed of a series of acts over a period of time, that evidences a continuity of purpose.

(b) Applicability.—This section does not apply to any peaceable activity intended to express political views or provide information to others.

(c) Prohibited Conduct.—A person may not follow another person in or about a public place or maliciously engage in a

---

19. *Id.*

20. *Id.* (some internal quotation marks omitted).

21. *See United States v. Bowker*, 372 F.3d 365, 377 n. 3 (6th Cir.2004), *vacated on other grounds*, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005).

22. *Id.* at 379; *see also United States v. Eckhardt*, 466 F.3d 938, 943–44 (11th Cir.2006) (following *Bowker*).

23. *Bowker*, 372 F.3d at 379.

24. *Id.*

25. *State v. Brobst*, 151 N.H. 420, 422, 857 A.2d 1253 (2004).

26. *Id.*

27. *Id.* at 423, 857 A.2d 1253.

28. *Id.*

29. 365 Md. 599, 781 A.2d 851 (2001).

course of conduct that alarms or *seriously* annoys another person:

(1) With intent to harass, alarm, or annoy the other person;

(2) After reasonable warning or request to desist by or on behalf of the other person; and

(3) Without a legal purpose.[30]

The *Galloway* court initially stressed the significance of the adverb "seriously" that preceded "annoy," [31] but the court also noted a number of other restrictions that made the statute acceptable: the statute required "a reasonable warning to desist," it did not apply to "any peaceable activity intended to express political views or provide information to others," and it mandated that there be no "legal purpose" for the activity.[32] Additionally, the court employed a narrowing construction by reading a "reasonable person" standard into the statute.[33] Further, the court found that the presence of a specific intent requirement, though it might not be able by itself to save a statute from constitutional infirmity, helped to ensure that an accused had fair notice that he was violating a criminal statute.[34] The court also quoted from a Connecticut case for the proposition that its harassment statute did not implicate overbreadth concerns under the First Amendment because the "prohibition

is against purposeful harassment by means of a device readily susceptible to abuse as a constant trespasser upon our privacy." [35]

### 3. Comparison with Other Statutes

The harassment provision before us lacks most of the restrictions found in the statutes that were analyzed in *Bowker* and *Galloway*. The portion of the statute at issue does not require that the calls be anonymous.[36] Although the Texas statute proscribes "repeated" communications, it does not require a showing that these communications were pursuant to a course of conduct. No exception is made for the expression of political views or the dissemination of information, and no reasonable warning to desist is required before further conduct triggers prosecution. Furthermore, the Texas statute does not contain a "reasonable person" standard.[37] And though specific intent is required by the Texas provision, that specific intent can attach to low intensity emotional states (annoy, alarm, embarrass).

### 4. Low Intensity versus High Intensity Emotional States

As we said in *Long*, "The First Amendment does not permit the outlawing of conduct merely because the speaker intends to annoy the listener and a reasonable person would in fact be annoyed." [38]

---

30. *Id.*, 365 Md. at 608–09, 781 A.2d at 856 (quoting Maryland Code, (1957, 1996 Repl. Vol., 2000 Cum.Supp.), Article 27, § 123) (emphasis in *Galloway* ).

31. *Id.*, 365 Md. at 608 n. 4, 781 A.2d at 856 n. 4.

32. *Id.*, 365 Md. at 619, 781 A.2d at 862.

33. *Id.*, 365 Md. at 620, 781 A.2d at 863.

34. *Id.*, 365 Md. at 632–33, 781 A.2d at 870–71.

35. *Id.*, 365 Md. at 641–42, 781 A.2d at 876 (quoting *Connecticut v. Snyder*, 49 Conn.App. 617, 624, 717 A.2d 240, 243–44 (Conn.App.Ct. 1998) (in turn quoting *Connecticut v. Anony-*

*mous*, 34 Conn.Supp. 689, 696, 389 A.2d 1270, 1273–74 (Conn.Super.Ct.1978))).

36. A portion of the statute does proscribe anonymous calls, *see* TEX. PENAL CODE § 42.07(a)(4), but that part of the statute was not relied upon in this prosecution, and I express no opinion about it.

37. *Long*, 931 S.W.2d at 289–90 ("reasonably likely" language in the former stalking provision did not codify a reasonable person standard).

38. *Id.* at 290 n. 4. The Supreme Court has recently suggested that whether an actor has a particular intent is a "true-or-false determination," not a "subjective judgment" that

The same could be said of the intent to alarm or embarrass. An intent to inflict one of these low intensity emotional states on the listener, even in the context of a telephone conversation, could easily be part of a legitimate communication protected by the First Amendment. A constituent might call his congressman to express a grievance, and annoying that congressman may be part of a legitimate attempt to spur him to act on that grievance. Political phone calls could be made to the homes of prospective voters with the intent to alarm those voters about a candidate's opponent [39] or about a particular government policy. A concerned neighbor or jilted lover might hope to embarrass a husband engaged in an extramarital affair by leaving a message on his answering machine for the wife to hear. Any of these behaviors might be criminal if the caller calls twice.

On the other hand, no one has the right to intentionally harass, abuse, or torment other people over a telephone. Specific intent is a limited mental state that is distinctly narrower than the mental states of knowledge and recklessness.[40] The statute requires that the caller intend to harass, abuse, or torment the recipient of the call, not merely that the caller know or suspect that his call may have that effect. Moreover, the telephone is a comparatively personal and private method of communication in which messages can be difficult to screen. As the *Galloway* court explained, it is "a device readily susceptible to abuse" by a person who intends to be "a constant trespasser upon our privacy." When the intent of the actor is to inflict one of the higher-intensity emotional states of harass, abuse, and torment in the relatively private, "captive-audience" telephone context, and the actor's conduct is reasonably likely to achieve that end, the First Amendment provides no protection.

### E. "Sole" Intent

Consequently, I would hold that the harassment provision at issue implicates the First Amendment with respect to the terms "annoy," "alarm," "embarrass," and "offend," but does not implicate the First Amendment with respect to the terms "harass," "abuse," and "torment." The Court contends that the entire statute is outside the purview of the First Amendment because "in the usual case, people whose conduct violates § 42.07(a)(4) will not have an intent to engage in legitimate communications of ideas, opinion, or information; they will have only the intent to inflict emotional distress for its own sake." [41] But nothing in the statute limits its application to those occasions when the actor's sole intent is to inflict emotional distress, and if the court is implying that situations are rare in which a person has more than one intent, I disagree. The mischief this statute can create is enormous, as some of the hypotheticals given above illustrate.

And it is not feasible to graft "sole intent" onto the harassment statute as a narrowing construction. As I have explained, a court has a general duty to

---

would render a statute vague. *See Ex parte Ellis*, 309 S.W.3d 71, 89–90 (Tex.Crim.App. 2010) (quoting *Williams*, 553 U.S. at 306, 128 S.Ct. 1830). In *Long*, we recognized that even if "intent to annoy, alarm, etc." was clear, a statute could still "run into a serious overbreadth problem." *Long*, 931 S.W.2d at 290 n. 4.

**39.** This observation was made by the court of appeals below. *See Scott*, 298 S.W.3d at 270.

**40.** *See Stewart v. State*, 240 S.W.3d 872, 873–74 (Tex.Crim.App.2007) (overturning tampering with evidence prosecution because, even if the defendant *knew* that his action would impair the availability of marijuana as evidence, the prosecution had not shown that he *intended* to impair its availability).

**41.** Court's op. at 670.

employ reasonable narrowing constructions to avoid constitutional violations, but it may not assume the legislative prerogative and rewrite a statute that is not readily subject to being narrowly construed.[42] The Legislature can legitimately punish a person who intentionally harasses, abuses, or torments someone over the telephone even if that is not the person's sole intent. One can easily imagine an ex-boyfriend hounding someone over the telephone with the intent to harass, abuse, or torment, but also having a particular grievance, real or imagined, to communicate. Such actors still deserve to be punished and are legitimately covered by the statute. When intentionally harassing, abusing, and tormenting conduct is occurring over the telephone, the authorities should not have to refrain from acting because the caller has or might have another reason for the call. Moreover, at trial the State would be saddled with proving "sole intent." A "sole intent" narrowing construction would do more to undermine the statute than simply severing (with respect to the part of the statute at issue) the problematic terms "annoy," "alarm," "embarrass," and "offend."[43] And finally, there is no basis in the statute for applying a "sole intent" construction only to the emotional states of "annoy," "alarm," and "embarrass." The Supreme Court has explained that a party "give[s] the game away" when he argues that an intent requirement applies in some circumstances but not others if there is no basis whatever in the text for doing so.[44] The Supreme Court stated that, though it "will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute."[45]

## F. Spoken Words

The Court also says that the text of harassment statute "does not require that the actor use spoken words."[46] The portion of the statute at issue here proscribes "telephone communications."[47] Although someone may use a "telephone communication" for something other than words (e.g. silence or heavy breathing), the portion of the statute at issue here overwhelmingly implicates the spoken word. For example, ringing the phone repeatedly is proscribed by a part of the statute not at issue here.[48] Moreover, although words are not required, that fact would not distinguish this case from *Long*, in which First Amendment freedoms were found to be implicated by the stalking statute.[49]

For the above reasons, I respectfully dissent.

---

42. *Long*, 931 S.W.2d at 295.

43. Indeed, one can wonder whether a "sole intent" narrowing construction would destroy the statute in an attempt to save it because virtually every defendant would claim to have some other intent in addition to an intent to inflict emotional distress.

44. *Holder v. Humanitarian Law Project*, 130 S.Ct. at 2718. ("Finally, plaintiffs give the game away when they argue that a specific intent requirement should apply only when the material-support statute applies to speech. There is no basis whatever in the text of

§ 2339B to read the same provisions in that statute as requiring intent in some circumstances but not others.").

45. *Id.*,

46. Court's op. at 669.

47. *See* Tex. Penal Code § 42.07(a)(4), quoted in this opinion, *ante.*

48. *See* Tex. Penal Code § 42.07(a)(4).

49. *See* this opinion, *ante.*