

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00335-CR

EX PARTE NATHAN SANDERS

On Appeal from the County Court at Law No. 1
Lubbock County, Texas
Trial Court No. 2015-484,541, Honorable Mark Hocker, Presiding

April 8, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Appellant Nathan Sanders was charged by information with harassment, that "with intent to harass, annoy, alarm, abuse, torment, or embarrass [the complainant]" he sent "repeated electronic communications to [the complainant] in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, to-wit: telephone calls, text messages, social media messages, handwritten letters, and inperson [sic] communication."[1] Appellant subsequently filed an *application for writ of habeas corpus and motion to quash information*, arguing section 42.07(a)(7) of the Texas Penal Code is

---

[1] TEX. PENAL CODE ANN. § 42.07(a)(7) (West 2018). Documents in the clerk's record indicate the complainant was a woman who had dated appellant.

"facially overbroad" in "violation of the First Amendment of the United States Constitution."

After consideration, the county court at law denied the application for writ of habeas corpus. Appellant now appeals the trial court's ruling. We will affirm.

In his sole issue on appeal, appellant contends Penal Code section 42.07(a)(7) contravenes the First Amendment because it is overbroad on its face.

## Standard of Review and Applicable Law

Appellant challenged the constitutionality of Penal Code section 42.07(a)(7) by means of a pre-trial application for a writ of habeas corpus pursuant to Code of Criminal Procedure article 11.09.[2] A pretrial writ application may challenge the facial constitutionality of the statute under which the applicant is prosecuted, but may not be used to advance an "as applied" challenge. *Ex parte Ellis,* 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (citing *Weise v. State*, 55 S.W.3d 617, 620-21 (Tex. Crim. App. 2001)). The determination whether a statute is facially unconstitutional is a question of law subject to *de novo* review. *Ex parte Ogle,* Nos. 03-18-00207-CR, 03-18-00208-CR, 2018 Tex. App. LEXIS 5955, at *3 (Tex. App.—Austin Aug. 1, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Ex parte Lo,* 424 S.W.3d 10, 14 (Tex. Crim. App. 2013)).

Generally, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in all of its applications. *Wagner v. State,* 539 S.W.3d 298, 310 (Tex. Crim. App. 2018) (citing *State v. Johnson,* 475 S.W.3d 860, 864 (Tex. Crim. App. 2015)). The First Amendment overbreadth doctrine provides an exception to this rule. *Id.* (citation omitted). That exception permits a litigant to

---

[2] TEX. CODE CRIM. PROC. ANN. art. 11.09 (West 2018).

succeed in challenging a law that regulates speech if "a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Id.* (citations omitted). The overbreadth doctrine, therefore, proscribes the government from "'banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.'" *Id.* (citing *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 255 (2002)). The overbreadth doctrine is to be "employed with hesitation and only as a last resort." *Id.* (citing *Ex parte Thompson,* 442 S.W.3d 325, 349 (Tex. Crim. App. 2014)).

Analysis

Application of *Scott v. State*

As our sister court in El Paso stated in its recent opinion addressing a facial habeas challenge to the constitutionality of section 42.07(a)(7), we do not write on a clean slate in our consideration of appellant's contention. *Ex parte Hinojos,* No. 08-17-00077-CR, 2018 Tex. App. LEXIS 10530, at *3 (Tex. App.—El Paso Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication). A number of Texas courts have addressed the section's constitutional validity against overbreadth challenges. *See Lebo v. State,* 474 S.W.3d 402 (Tex. App.—San Antonio 2015, pet ref'd); *Ex parte Ogle,* 2018 Tex. App. LEXIS 5955; *Ex parte Reece*, No. 11-16-00196-CR, 2016 Tex. App. LEXIS 12649 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Blanchard v. State,* No. 03-16-00014-CR, 2016 Tex. App. LEXIS 5793 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication). Most often, their

3

analyses of the issue begin with the 2010 opinion of the Court of Criminal Appeals in *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010).

In *Scott,* the court considered the question whether subsection (4) of section 42.07(a)[3] implicates the free-speech guarantee of the First Amendment. In its analysis, the court characterized the subsection's specific intent provision as requiring "that the actor have the intent to inflict harm on the victim in the form of one of the listed types of emotional distress." *Id.* at 669. It further found that the subsection, "by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress." *Id.* at 669-70. Finally, the court concluded any communicative conduct to which the subsection might apply "is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim)

---

[3] Texas Penal Code § 42.07 reads in pertinent part:

> (a)    A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:
>
> * * *
>
> 4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another; or
>
> * * *
>
> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

in an essentially intolerable manner." *Id.* at 670.[4] All courts of appeals who have addressed the issue hold *Scott's* free-speech analysis of subsection (a)(4) applies also to subsection (a)(7). *See, e.g.*, *Lebo,* 474 S.W.3d at 407 ("We consider the free-speech analysis in *Scott* equally applicable to section 42.07(a)(7)"); *Ex parte Ogle,* 2018 Tex. App. LEXIS 5955, at *6-7; *Ex parte Reece*, 2016 Tex. App. LEXIS 12649, at *5-6; *Blanchard,* 2016 Tex. App. LEXIS 5793, at *7.

Appellant, however, contends *Scott* does not control the disposition of his appeal. In support, he first argues *Scott's* analysis has been rendered outmoded by decisions of the United States Supreme Court. He particularly relies on *Reed v. Town of Gilbert,* 2015 U.S. LEXIS 4061, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015), which, as he notes, was decided five years after *Scott.* In *Reed*, the Court clarified the means of identification of content-based restrictions on speech, those requiring strict scrutiny when challenged under the First Amendment. As appellant sees it, *Reed*'s identification of "more subtle" content-based distinctions that define "regulated speech by its function or purpose," 135 S. Ct. at 2227, is applicable directly to section 42.07(a)(7). He contends the statute's specific intent requirement of intent to harass, annoy, alarm, abuse, torment, or embarrass another constitutes a distinction based on a message's purpose, and the proof requirement that the communication was reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another is a distinction based on its function. Accordingly, paraphrasing *Reed*, *id*, appellant argues "It is a distinction drawn based on

---

[4] Earlier in its opinion the court cited *Cohen v. California*, 403 U.S. 15, 21 (1971), for the proposition, "The State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner." 322 S.W.3d at 668-69.

5

the message the speaker conveys and wants to convey, and therefore is subject to strict scrutiny."

The Third Court of Appeals in *Ogle* addressed, and rejected, the same contention. 2018 Tex. App. LEXIS 5955 at *13-14. It noted Ogle had not cited authority applying *Reed's* analysis to government prohibition of "repeated and intentionally harassing conduct." *Id.* at *13. Appellant's briefing in this appeal similarly lacks such authority. And, like the court in *Ogle*, we are not persuaded that *Reed* requires abandonment of *Scott's* rationale based on the Court's holding in *Cohen*. *Id.* at *14 (citing *Cohen,* 403 U.S. at 21).

As others have pointed out, *e.g., Ogle*, 2018 Tex. App. LEXIS 5955, at * 7, all subsections of section 42.07(a) require the same specific intent, that "to harass, annoy, alarm, abuse, torment, or embarrass another." And while subsection (a)(4) is violated when the actor "makes" repeated telephone communications and (a)(7) is violated when the actor "sends" repeated electronic communications, both subsections require for guilt that the repeated communications occur "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."

At oral argument in the case now before us, there was discussion regarding free-speech distinctions that might reasonably be drawn between prohibition of communications intended to harass or abuse versus those intended merely to annoy or embarrass. The dissenting opinion in *Scott* proposed such distinctions among the specific intent and "reasonably likely" effect provisions of subsection (a)(4). After analysis, the dissent concluded:

6

> Consequently, I would hold that the harassment provision at issue implicates the First Amendment with respect to the terms "annoy," "alarm," "embarrass," and "offend," but does not implicate the First Amendment with respect to the terms "harass," "abuse," and "torment." The Court contends that the entire statute is outside the purview of the First Amendment because "in the usual case, people whose conduct violates § 42.07(a)(4) will not have an intent to engage in legitimate communication of ideas, opinion, or information; they will have only the intent to inflict emotional distress for its own sake." But nothing in the statute limits its application to those occasions when the actor's sole intent is to inflict emotional distress, and if the court is implying that situations are rare in which a person has more than one intent, I disagree. The mischief this statute can create is enormous, as some of the hypotheticals given above illustrate."

*Scott,* 322 S.W.3d at 676 (Keller, P.J., dissenting).

Over the dissent, the Court of Criminal Appeals at least implicitly rejected such distinctions drawn among the statute's listed intents and "reasonably likely" effects, and instead grouped them all together as "listed types of emotional distress." *Id.* at 669. Given *Scott*'s interpretation of the language appearing in subsection (a)(4), as an intermediate court we are not at liberty to apply differing free-speech analyses based on differences among the "types of emotional distress" that are listed by identical language also in subsection (a)(7).

Appellant also points to the dissents to the Court of Criminal Appeals' refusal of the petitions for review in *Ogle* and *Ex parte Reece. See Ogle v. State*, 563 S.W.3d 912 (Tex. Crim. App. 2018); *Ex parte Reece,* 517 S.W.3d 108 (Tex. Crim. App. 2017). That fewer than a majority of members of the Court of Criminal Appeals have called for re-

examination of one of that court's opinions, however, does not provide a reason for us to question its application to the appeal before us.[5]

For those reasons we decline appellant's invitation to depart from the holdings of other Texas courts of appeals applying *Scott*'s analysis in rejection of contentions section 42.07(a)(7) is constitutionally overbroad. In so doing, however, we express our disagreement with a rationale the State offers in support of the validity of the statute.

Conduct versus Protected Speech

Citing *Ex parte Ingram,* 533 S.W.3d 887 (Tex. Crim. App. 2017) the State contends section 42.07(a)(7) does not constitute a content-based restriction on speech but, like the solicitation statute addressed in that case, merely criminalizes conduct. The State argues, "It is the *conduct* of sending repeated electronic communications in a harassing manner that is the gravamen of the offense. Because conduct and not merely speech is implicated in Section 42.07(a)(7), the statute is a conduct-based regulation that is subject to a presumption of validity."

*Ingram* addressed contentions subsection (c) of the pre-2015 version of Penal Code section 33.021, prohibiting online solicitation of a minor, were facially unconstitutional. 533 S.W.3d at 890. After applying a narrowing construction to language then contained in the statute, *id.* at 895-97, the court considered Ingram's argument the statute was unconstitutionally overbroad. *Id.* at 897-900. Rejecting the argument, the court began by noting that "speech or writing used as an integral part of conduct in

_____

[5] That is particularly true here in view of the reliance on *Scott*'s analysis in the Court of Criminal Appeals' 2018 opinion in *Wagner. See Wagner*, 539 S.W.3d at 311-12 (rejecting overbreadth challenge to Penal Code section 25.07(a)(2)(A)).

violation of a valid criminal statute" is a category of speech unprotected by the First Amendment. *Id.* at 897 (citing and quoting *United States v. Stevens,* 559 U.S. 460, 471 (2010)). The court likewise cited the exemption from First Amendment protection of speech that constitutes "the commission of a 'sort[] of inchoate crime[]—[an] act looking toward the commission of another crime' that the legislature can validly punish." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 300 (2008)). It concluded that the challenged subsection's prohibition of the conduct of soliciting a minor to meet with the intent that the minor engage in illegal sexual activity "created an inchoate offense for the object offense of sexual assault of a child." *Id.* at 898. Referring to its opinion in *Ex parte Lo,* 424 S.W.3d at 16, the court described such solicitation statutes as "routinely upheld as constitutional because offers to engage in illegal transactions such as sexual assault of a minor are categorically excluded from First Amendment protection." *Id.* (citation omitted). The court quoted another state court's summary stating, "The common thread in cases involving First Amendment challenges to luring statutes is that freedom of speech does not extend to speech used as an integral part of conduct in violation of a valid criminal statute." *Id.* (quoting *State v. Backlund,* 672 N.W.2d 431, 441 (N.D. 2003)).

The State refers also to our opinion in *Delacruz v. State,* No. 07-15-00230-CR, 2017 Tex. App. LEXIS 6018 (Tex. App.—Amarillo June 29, 2017, no pet.) (mem. op., not designated for publication), which also addressed section 33.021(c), and relied on *Ex parte Lo's* statement that "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." 2017 Tex. App. LEXIS 6018 at *6 (citing *Ex parte Lo,* 424 S.W.3d at 17).

The State does not cite us to authority applying *Ingram*'s "inchoate offense" analysis to section 42.07(a)(7) or describing how the communications sent with the intent and in the manner that section describes are "an integral part of conduct in violation of a valid criminal statute." *Ingram,* 533 S.W.3d at 897; *see State v. Doyal*, ___ S.W.3d ___, 2019 Tex. Crim. App. LEXIS 161, at *7 (Tex. Crim. App. Feb. 27, 2019) (form of unprotected speech involved in *Ingram* is "speech that furthers some other activity that is a crime"). Nor does the State identify the criminal statute of which it contends such communications are an integral part. *See Doyal,* 2019 Tex. Crim. App. LEXIS 161, at *7 (characterizing speech addressed in *Ingram* as "solicitation to facilitate a sex crime"); *Ingram,* 533 S.W.3d at 898 (conduct prohibited by challenged statute "created an inchoate offense for the object offense of sexual assault of a child").

Moreover, the *Scott* opinion did not characterize the forbidden telephone communications as conduct rather than speech, nor have any of the opinions finding the *Scott* analysis applicable to section 42.07(a)(7) characterized its prohibition of certain electronic communications as conduct-based regulation. *See Lebo,* 474 S.W.3d at 406-07; *Ex parte Hinojos,* 2018 Tex. App. LEXIS 10530, at *14; *Ex parte Ogle,* 2018 Tex. App. LEXIS 5955, at *13-14; *Ex parte Reece*, 2016 Tex. App. LEXIS 12649, at *6-7; *Blanchard,* 2016 Tex. App. LEXIS 5793, at *7.

## Conclusion

We are not persuaded the State's proffered theory based on *Ingram* is properly applied to section 42.07(a)(7). Nonetheless, for the reasons expressed we find the repeated electronic communications the section proscribes, made with the "intent to inflict

emotional distress for its own sake," *Scott*, 322 S.W.3d at 670, are not protected speech under the First Amendment because they invade the substantial privacy interests of the victim "in an essentially intolerable manner." *Id.* Accordingly, we overrule appellant's contention section 42.07(a)(7) is facially overbroad and affirm the trial court's denial of appellant's application for writ of habeas corpus.

James T. Campbell
Justice

Quinn, C.J., concurring in the result.[6]

Do not publish.

---

[6] Chief Justice Quinn joins in the majority opinion for the reasons stated therein. However, the reasons expressed by Presiding Judge Keller in her dissent in *Scott v. State*, 322 S.W.3d 662 (Tex. Crim. App. 2010), the chipping away at *Scott* by the majority in *Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014), and the concurrence of P.J. Keller and Judge Johnson in *Wilson* sways him to invite the Court of Criminal Appeals to reconsider the majority opinion in *Scott.* He too fears, as expressed by P.J. Keller and Judge Johnson, the potentiality of criminal convictions arising from one's exercise of First Amendment rights. This is not to say he welcomes the mid-supper calls from politicians to vendors but understands that such annoyances are part and parcel of residing in a country where ideas, innovation, intellect, and their urging remain invaluable.