

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00176-CR
_____


ANGELA CHEATWOOD LEE, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the County Court at Law No. 2
Angelina County, Texas
Trial Court No. 09-1822



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Angela Cheatwood Lee appeals her conviction for the misdemeanor offense of harassment.[1]   After a trial to the court, she was found guilty of harassment for repeatedly sending telephonic messages to her former boyfriend, William Chunn.   The trial court sentenced Lee to three months' incarceration and a fine of $250.00, but suspended the jail term, placing Lee on community supervision for six months.   On appeal,[2] Lee claims:   (1) the statute penalizing harassment is unconstitutionally vague as it is applied to Lee; and (2) the evidence is insufficient to support the judgment of the trial court.   After reviewing the applicable law, the evidence, and Lee's brief, we overrule her points of error and affirm the trial court's judgment and sentence.

## I.    A Woman Scorned

For a period ending about two years before trial (which occurred in late spring of 2010), Lee and Chunn had engaged in an intermittent relationship for about six or seven years, a relationship which Chunn described as both "emotional" and "[m]iserable."   In the middle to latter part of 2009, Chunn established a romantic relationship with another woman, Teresa Bobbitt (to whom reference is made hereafter as Teresa).   In August and September 2009, Lee made a number of telephone calls to Chunn's telephone number and left multiple voice messages.   Chunn

---

[1]TEX. PENAL CODE ANN. § 42.07 (Vernon 2003).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.   *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).   We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.   *See* TEX. R. APP. P. 41.3.

2

testified Lee began to call more frequently around September 26, 2009, when Lee discovered that Chunn was seeing Teresa. In addition, Lee telephoned Chunn frequently at his work places, the unwanted calls causing Chunn to lose one job. Chunn married Teresa in January 2010.

Teresa testified that the calls and messages from Lee became much more frequent when Lee discovered Teresa and Chunn were dating. Teresa said the calls "[n]ever stopped" since May 2009. Like Chunn, she said the unwanted and repeated contact from Lee strained the Chunns' relationship. Teresa related that because she and Chunn shared a cell phone, she was aware of the multiple text messages sent by Lee to Chunn; oftentimes, Teresa would answer calls to discover that the caller was Lee, who would then demand to speak to Chunn. Teresa testified she took the cell phone, which bore several messages recorded in August and September 2009, to the police and the police recorded the messages which had been left. Teresa testified there were many more messages than those she shared with police, but that she provided the police with only those few, due to the limited number of messages the cell phone could retain. Teresa further testified she had on many occasions told Lee to cease the calls, calls which she related were often placed in the late night or early morning hours. Teresa also testified that she found the calls placed about 2:00 a.m. to be particularly annoying.

Lee was interviewed by Lufkin Police Detective Ron Stubblefield. The State introduced a compact disc, which contained a recording of that interview along with recordings of five messages left by Lee on Chunn's cell phone. Some of these messages are very brief and consisted

3

of requests by Lee for Chunn to return the call.   In contrast to those short messages, another of the calls lasts about a minute and twenty seconds and is a rambling soliloquy by Lee wherein she declares her love for Chunn and bemoans problems in their past relationship.   The following and final message consumes a little more than half a minute; in that message, Lee makes reference to the prior call, saying both that she did not mean and did mean things she had said in the previous message and again wishing she could talk with Chunn about their relationship.[3]   In the recorded interview, Lee told Stubblefield that her repeated efforts to contact Chunn were due to her concern for his lifestyle choices (such as alleged drug use) and that the purpose of her calls was to encourage him "to straighten up" and "live right."   Also mentioned was an instance in which Lee came to a bowling alley to see Chunn and another incident about a year prior to the interview when an argument between Lee and Chunn's sister occurred.

## II.     No Unconstitutional Vagueness of the Harassment Statute as Applied

### A.     Who Possessed the Phone?

In her first point of error, Lee complains the statute is unconstitutionally vague as applied to her under these circumstances.

---

[3]The record does not indicate when these messages were left.   The five messages appear in two files on the compact disc.   The first file is a single message; at the beginning of this message, an automated voice states the length of the message and reads a time and date of 11:07 a.m., on August 11, 2009.   The other file contains five messages which play one after another.   At the beginning of the messages, the automated voice says 3:20 p.m., September 29, 2009.   From witness testimony, it seems that William or Teresa Chunn brought their cell phone to Detective Stubblefield, who transferred those messages to his computer or recorded them as the messages were played for him.

4

A claim that a statute is unconstitutional "as applied" is a claim that the statute, although generally constitutional, operates unconstitutionally as to the claimant because of his particular circumstances. *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006); *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997).[4] Lee raises three areas where she believes the statute is vague.

Lee claims the statute is vague because it allows a conviction where the "evidence offered does not show that the phone which received the voice messages was in the possession of William Chunn as opposed to Teresa Chunn." Lee provides no explanation how this situation renders the statute vague as applied to her. Teresa testified that when she and Chunn began dating, they got a single cell phone and Teresa usually kept that telephone with her. She said many calls came to that telephone from Lee, during which Lee asked or demanded to speak with Chunn. Teresa also said that she found text messages from Lee to Chunn which had been directed to the telephone. Chunn also testified that he received multiple calls and messages from Lee on the cell phone within the span of time named in the information and for months after that time span. All of this is evidence of voice messages directed to Chunn (irrespective of whether the phone or phones upon which the messages were received were in the possession of Chunn, of Teresa, or in their joint possession).

---

[4]Earlier this year, the Texas Court of Criminal Appeals found Section 42.07(a)(4) did not implicate the free speech guarantees of the First Amendment, and the statute was not unconstitutionally vague on its face. *Scott v. State*, 322 S.W.3d 662, 669–70 (Tex. Crim. App. 2010).

5

Whether the telephone upon which the offending voice messages were received was in the possession of the victim (Chunn) named in the complaint and information, or Chunn's wife, Teresa, is not relevant. The statute criminalizes conduct where one, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," makes repeated telephone calls to another, causing that person's "telephone . . . to ring repeatedly or makes repeated telephone communications" either anonymously or in a "manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX. PENAL CODE ANN. § 42.07(a)(4). There is nothing in the proscribed behavior criminalized by this statute which requires the accused to know which or whose telephone actually received the offending calls or (also in this case) messages. In this age of ubiquitous communication devices, it is certainly possible and is not inconceivable that more than one telephone could be caused to ring repeatedly or made to receive communications or messages. Lee was not required to know the identity of the person who actually possessed the telephone to which she was making the proscribed communications at the time she placed the calls or sent the messages so long as the State could prove, under the terms of Section 42.07(a)(4), that Lee intended to direct those communications to Chunn, the victim. If the State could prove that Lee engaged in the prohibited conduct by intending to make the communications to Chunn, it would not exculpate her if the telephone which Lee contacted was actually in the possession of Chunn's wife at the time of the transmission. Had Lee not been satisfied with the sufficiency of the notice provided by the complaint concerning the nature of the State's allegations and how she

was alleged to have violated the law, her remedy was to file a motion to quash the complaint prior to trial. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005).

## B. Intent

In the same point of error, Lee contends that the statute under which she was charged and convicted was vague as applied to her "in failing to define if one such as the appellant can be convicted without any offer that she had a specific intent to violate the statute[']s provisions of intending to harass, annoy, alarm, abuse, torment, embarrass, or offend another." We disagree with Lee's argument. Section 42.07(a)(4) requires proof that the actor engages in one of the various forms of prohibited conduct "with intent to harass, annoy, alarm, abuse, torment, or embarrass another." TEX. PENAL CODE ANN. § 42.07(a). The statute appears to be quite specific in its wording and fits the circumstances described here.[5]

In support of her claim that the statute is vague for not requiring "specific intent," Lee's brief claims that Chunn "believe[d] [Lee's] intent [was] otherwise." We find nothing at the location in the reporter's record to which Lee cites to support this assertion, unless she is referring to Chunn's statement that Lee's harassing calls started when Lee found out Chunn was seeing another woman. This neither negates an inference of intent on Lee's part, nor does Lee offer any support for her claim that Chunn did "not indicate he believed [Lee] had a specific intent to harass,

---

[5]If Lee is complaining about the sufficiency of the evidence to prove intent, it is an oft-cited tenet of criminal law that intent may be inferred from one's acts or words. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Based on the number of calls and messages and the span of time over which they occurred, and evidence Lee was told on many occasions by the Chunns and police to cease her attempts to contact Chunn, there was ample evidence from which the trier of fact could find evidence of Lee's intent. This contention is addressed in Lee's second point of error.

7

annoy, alarm, abuse, torment, embarrass, or offend him." Lee's appellate argument in this regard would seemingly apply more appropriately to an attack on the sufficiency of the evidence than to an argument or explanation of Lee's contention that the statute is vague as applied to her.

In her complaint that Section 42.07 is vague as applied to Lee's circumstances, she complains of the statute's use of the terms "repeatedly" and "repeated." Interpreting this statute, the Texas Court of Criminal Appeals came to the following conclusion on the meaning of "repeated" in this context:

> The term "repeated" is commonly understood to mean "reiterated," "recurring," or "frequent." *Webster's Ninth New Collegiate Dictionary* 998 (1988); 2 *Oxford English Dictionary* 2494 (1971). Here, we believe that the Legislature intended the phrase "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode," because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition. See M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L. Rev. 1403, 1430 (1989) ("Prudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect the recipient becomes more compelling.").

*Scott*, 322 S.W.3d at 669 n.12. In her brief, Lee argues "the assumption that simple repeated repetition [sic] can be construed on its face is vague as applied to the four non specific voice messages were are [sic] produced." We take this fairly convoluted statement to mean that Lee does not believe that four of the five recordings of telephone messages introduced into evidence were sufficient to constitute the "repeated telephone communications" prohibited by the statute. TEX. PENAL CODE ANN. § 42.07(a)(4). The testimony is not perfectly clear, but Teresa testified to

8

two telephone calls placed on the morning of September 9, 2009, three such calls about 6:00 a.m. September 25, 2009, while there were three calls placed about 2:00 a.m and another two about 1:00 p.m. on September 26, 2009. Of these calls, Teresa said, "Those were the only ones . . . that I got recorded. If I would have kept up with it, there would have been more." From these rounds of telephone calls came the voice messages, which the Chunns presented to police and which were introduced into evidence.

We find in the instant situation, the telephone calls and voice messages described by the Chunns, as well as the few actually recorded and introduced into evidence, could qualify as "repeated" as that term is used in the statute.[6] Lee has failed to establish the statute is vague as applied to her situation. We overrule Lee's first point of error.

## III.    Sufficiency of the Evidence

In her second point of error, Lee claims the evidence is legally insufficient to support the trial court's verdict. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the charged offense. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (4-1-4 decision) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton*

---

[6]Lee then goes on to claim there is insufficient evidence to support a finding the voice messages were meant to annoy, alarm, abuse, torment, embarrass, or offend the recipient, as those terms were discussed in *Scott*. *See Scott*, 322 S.W.3d at 669 n.13. A challenge to the sufficiency of the evidence is different from a claim the statute is vague as applied to Lee. Regardless of how we construe what is arguably a multifarious point of error, Lee has not explained how, much less demonstrated, that Section 42.07 of the Texas Penal Code is vague as applied to her.

9

*v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically-correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7] As charged in the information, the State was required to prove that (1) on or about September 26, 2009, (2) Lee, with intent to harass, annoy, alarm, abuse, torment, or embarrass Chunn, (3) sent repeated voice message communications to Chunn, (4) in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another person. TEX. PENAL CODE ANN. § 42.07(a)(4).

Lee argues that the evidence is legally insufficient to prove that she had the specific intent to harass, annoy, alarm, abuse, torment, or embarrass Chunn. Intent may be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. *Guevara*, 152 S.W.3d at 50. While it is true that only five of the messages were introduced into evidence to prove the information's charge that Lee harassed Chunn by leaving voice messages, there was also testimony that Lee left many more messages than were preserved and presented to Detective

---

[7]This test is used for bench trials as well as jury trials. *Malik*, 953 S.W.2d at 240.

Stubblefield. Teresa said she only preserved the five messages she presented to Stubblefield, but there were more. Although Chunn said that Lee had left fifteen to fifty messages, he did not specify a time period. Also, Chunn and Teresa both said there were a high number of calls, with Chunn estimating fifty to a hundred. The testimony heard by the court was that Lee had made multiple calls to Chunn at work and Chunn said he had lost one job due to Lee's calls. Lee told Stubblefield that she contacted one of Chunn's employers to tell the employer Chunn had falsified a drug test. This allegation, in addition to the number of calls and messages over time, support an inference that the messages Lee left on or about September 26 were made with the intent to harass, annoy, alarm, abuse, torment, or embarrass Chunn.

Both of the Chunns used the word "annoy" to describe their feelings about Lee's conduct in making the calls and leaving the messages. Chunn said the calls were "very annoying"; and Teresa said she was annoyed by Lee and her conduct. Chunn and Teresa both said they told Lee not to call "several times" because Chunn did not want to speak to Lee. Listening to the recordings of the messages admitted into evidence could further yield an inference they were made with the intent to harass, annoy, abuse, torment, or embarrass Chunn. Two of the messages are rambling professions of Lee's love for Chunn and her regret that their relationship had terminated. Both Chunns testified that Lee's repeated calls and messages placed a strain on their relationship, and both said the calls did not begin or at least achieve the high number until Lee became aware of the relationship which existed between Chunn and Teresa. There was evidence the Chunns

11

contacted Lee and asked her to cease her calls. Lufkin Police Officer Stephen Dickens testified he told Lee on June 19, 2009, that Chunn wanted her contacts to cease, and Dickens asked Lee not to call Chunn any more. Likewise, Detective Stubblefield also said that he had told Lee to stop contacting Chunn. Although Stubblefield did not say exactly when he told Lee to stop, he said that he told her before the interview with her which occurred on October 5, 2009, and "prior to the last set of phone calls that were made."

Viewed in totality, a rational finder of fact could conclude that Lee had the intent to harass, annoy, alarm, torment, or embarrass Chunn (even if the content of the calls, when contact was made, consisted of professions of love and pleas for forgiveness), and that she made repeated telephone communications[8] reasonably likely to harass, alarm, annoy, abuse, torment, embarrass, or offend Chunn. The evidence is sufficient to support the trial court's judgment. Lee's second point of error is overruled.

---

[8]The Texas Court of Criminal Appeals in *Scott* concluded text of Section 42.07(a)(4) "suggests that it covers ordinary voice (and therefore voice mail) communication involving an ordinary telephone." *Scott*, 322 S.W.3d at 668. Lee does not question whether the use of "voice messages" in the charging instruments alleges an offense under Section 42.07(a)(4).

We affirm the trial court's judgment.


Bailey C. Moseley
Justice

Date Submitted:     December 30, 2010
Date Decided:       January 14, 2011

Do Not Publish