In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00176-CR

                                                ______________________________

 

 

                               ANGELA CHEATWOOD LEE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the County
Court at Law No. 2

                                                           Angelina County, Texas

                                                           Trial
Court No. 09-1822

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Angela
Cheatwood Lee appeals her conviction for the misdemeanor offense of harassment.[1]  After a trial to the court, she was found
guilty of harassment for repeatedly sending telephonic messages to her former
boyfriend, William Chunn.  The trial
court sentenced Lee to three months’ incarceration and a fine of $250.00, but
suspended the jail term, placing Lee on community supervision for six
months.  On appeal,[2] Lee
claims:  (1) the statute penalizing
harassment is unconstitutionally vague as it is applied to Lee; and (2) the
evidence is insufficient to support the judgment of the trial court.  After reviewing the applicable law, the
evidence, and Lee’s brief, we overrule her points of error and affirm the trial
court’s judgment and sentence.   

I.          A Woman Scorned

            For
a period ending about two years before trial (which occurred in late spring of
2010),  Lee and Chunn had engaged in an
intermittent relationship for about six or seven years, a relationship which
Chunn described as both “emotional” and “[m]iserable.”  In the middle to latter part of 2009, Chunn
established a romantic relationship with another woman, Teresa Bobbitt (to whom
reference is made hereafter as Teresa). 
In August and September 2009, Lee made a number of telephone calls to
Chunn’s telephone number and left multiple voice messages.  Chunn testified Lee began to call more frequently
around September 26, 2009, when Lee discovered that Chunn was seeing Teresa.  In addition, Lee telephoned Chunn frequently
at his work places, the unwanted calls causing Chunn to lose one job.  Chunn married Teresa in January 2010.

            Teresa
testified that the calls and messages from Lee became much more frequent when
Lee discovered Teresa and Chunn were dating. 
Teresa said the calls “[n]ever stopped” since May 2009.  Like Chunn, she said the unwanted and
repeated contact from Lee strained the Chunns’ relationship.  Teresa related that because she and Chunn
shared a cell phone, she was aware of the multiple text messages sent by Lee to
Chunn; oftentimes, Teresa would answer calls to discover that the caller was Lee,
who would then demand to speak to Chunn. 
Teresa testified she took the cell phone, which bore several messages
recorded in August and September 2009, to the police and the police recorded
the messages which had been left.  Teresa
testified there were many more messages than those she shared with police, but
that she provided the police with only those few, due to the limited number of
messages the cell phone could retain. 
Teresa further testified she had on many occasions told Lee to cease the
calls, calls which she related were often placed in the late night or early
morning hours.  Teresa also testified that
she found the calls placed about 2:00 a.m. to be particularly annoying.  

            Lee
was interviewed by Lufkin Police Detective Ron Stubblefield.  The State introduced a compact disc, which
contained a recording of that interview along with recordings of five messages
left by Lee on Chunn’s cell phone.  Some
of these messages are very brief and consisted of requests by Lee for Chunn to
return the call.  In contrast to those
short messages, another of the calls lasts about a minute and twenty seconds
and is a rambling soliloquy by Lee wherein she declares her love for Chunn and
bemoans problems in their past relationship. 
The following and final message consumes a little more than half a minute;
in that message, Lee makes reference to the prior call, saying both that she
did not mean and did mean things she had said in the previous message and again
wishing she could talk with Chunn about their relationship.[3]  In the recorded interview, Lee told
Stubblefield that her repeated efforts to contact Chunn were due to her concern
for his lifestyle choices (such as alleged drug use) and that the purpose of
her calls was to encourage him “to straighten up” and “live right.”  Also mentioned was an instance in which Lee
came to a bowling alley to see Chunn and another incident about a year prior to
the interview when an argument between Lee and Chunn’s sister occurred.  

II.        No Unconstitutional
Vagueness of the Harassment Statute as Applied

            A.        Who
Possessed the Phone?

            In
her first point of error, Lee complains the statute is unconstitutionally vague
as applied to her under these circumstances. 


            A
claim that a statute is unconstitutional “as applied” is a claim that the
statute, although generally constitutional, operates unconstitutionally as to
the claimant because of his particular circumstances.  Gillenwaters
v. State, 205 S.W.3d 534, 536 n.3 (Tex. Crim. App. 2006); Tex. Boll Weevil Eradication Found., Inc.
v. Lewellen, 952 S.W.2d 454, 461 n.5 (Tex. 1997).[4]  Lee raises three areas where she believes the
statute is vague.   

            Lee
claims the statute is vague because it allows a conviction where the “evidence
offered does not show that the phone which received the voice messages was in
the possession of William Chunn as opposed to Teresa Chunn.”  Lee provides no explanation how this
situation renders the statute vague as applied to her.  Teresa testified that when she and Chunn
began dating, they got a single cell phone and Teresa usually kept that telephone
with her.  She said many calls came to
that telephone from Lee, during which Lee asked or demanded to speak with
Chunn.  Teresa also said that she found
text messages from Lee to Chunn which had been directed to the telephone.  Chunn also testified that he received multiple
calls and messages from Lee on the cell phone within the span of time named in
the information and for months after that time span.  All of this is evidence of voice messages
directed to Chunn (irrespective of whether the phone or phones upon which the
messages were received were in the possession of Chunn, of Teresa, or in their
joint possession).   

            Whether
the telephone upon which the offending voice messages were received was in the
possession of the victim (Chunn) named in the complaint and information, or
Chunn’s wife, Teresa, is not relevant. 
The statute criminalizes conduct where one, “with intent to harass,
annoy, alarm, abuse, torment, or embarrass another,” makes repeated telephone
calls to another, causing that person’s “telephone . . . to ring repeatedly or
makes repeated telephone communications” either anonymously or in a “manner
reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend
another.”  Tex. Penal Code Ann. § 42.07(a)(4).  There is nothing in the proscribed behavior
criminalized by this statute which requires the accused to know which or whose
telephone actually received the offending calls or (also in this case)
messages.  In this age of ubiquitous
communication devices, it is certainly possible and is not inconceivable that
more than one telephone could be caused to ring repeatedly or made to receive
communications or messages.  Lee was not
required to know the identity of the person who actually possessed the
telephone to which she was making the proscribed communications at the time she
placed the calls or sent the messages so long as the State could prove, under
the terms of Section 42.07(a)(4), that Lee intended to direct those
communications to Chunn, the victim.  If the
State could prove that Lee engaged in the prohibited conduct by intending to
make the communications to Chunn, it would not exculpate her if the telephone
which Lee contacted was actually in the possession of Chunn’s wife at the time
of the transmission.  Had Lee not been
satisfied with the sufficiency of the notice provided by the complaint
concerning the nature of the State’s allegations and how she was alleged to
have violated the law, her remedy was to file a motion to quash the complaint
prior to trial.  See Tex. Code Crim. Proc.
Ann. art. 1.14(b) (Vernon 2005).  


            B.        Intent

            In
the same point of error, Lee contends that the statute under which she was
charged and convicted was vague as applied to her “in failing to define if one
such as the appellant can be convicted without any offer that she had a
specific intent to violate the statute[’]s provisions of intending to harass,
annoy, alarm, abuse, torment, embarrass, or offend another.”  We disagree with Lee’s argument.  Section 42.07(a)(4) requires proof that the
actor engages in one of the various forms of prohibited conduct “with intent to
harass, annoy, alarm, abuse, torment, or embarrass another.”  Tex.
Penal Code Ann. § 42.07(a).  The
statute appears to be quite specific in its wording and fits the circumstances
described here.[5]   

            In
support of her claim that the statute is vague for not requiring “specific
intent,” Lee’s brief claims that Chunn “believe[d] [Lee’s] intent [was]
otherwise.”  We find nothing at the
location in the reporter’s record to which Lee cites to support this assertion,
unless she is referring to Chunn’s statement that Lee’s harassing calls started
when Lee found out Chunn was seeing another woman.  This neither negates an inference of intent
on Lee’s part, nor does Lee offer any support for her claim that Chunn did “not
indicate he believed [Lee] had a specific intent to harass, annoy, alarm,
abuse, torment, embarrass, or offend him.” 
Lee’s appellate argument in this regard would seemingly apply more
appropriately to an attack on the sufficiency of the evidence than to an
argument or explanation of Lee’s contention that the statute is vague as
applied to her.   

            In
her complaint that Section 42.07 is vague as applied to Lee’s circumstances,
she complains of the statute’s use of the terms “repeatedly” and “repeated.”  Interpreting this statute, the Texas Court of
Criminal Appeals came to the following conclusion on the meaning of “repeated”
in this context:

The term “repeated” is commonly understood to mean
“reiterated,” “recurring,” or “frequent.”  Webster’s
Ninth New Collegiate Dictionary 998 (1988); 2 Oxford English Dictionary 2494 (1971).  Here, we believe that the Legislature intended
the phrase “repeated telephone communications” to mean “more than one telephone
call in close enough proximity to properly be termed a single episode,” because
it is the frequent repetition of harassing telephone calls that makes them
intolerable and justifies their criminal prohibition.  See M. Royall, Constitutionally Regulating Telephone Harassment:  An Exercise in Statutory Precision, 56 U.
Chi. L. Rev. 1403, 1430 (1989) (“Prudence may justify a hands-off policy for
single calls made with the intent to harass, but as harassing calls are
repeated the state interest in intervening to protect the recipient becomes
more compelling.”).

 

Scott, 322 S.W.3d at 669 n.12. 
In her brief, Lee argues “the assumption that simple repeated repetition
[sic] can be construed on its face is vague as applied to the four non specific
voice messages were are [sic] produced.” 
We take this fairly convoluted statement to mean that Lee does not
believe that four of the five recordings of telephone messages introduced into
evidence were sufficient to constitute the “repeated telephone communications”
prohibited by the statute.  Tex. Penal Code Ann. § 42.07(a)(4).  The testimony is not perfectly clear, but
Teresa testified to two telephone calls placed on the morning of September 9,
2009, three such calls about 6:00 a.m. September 25, 2009, while there were three
calls placed about 2:00 a.m and another two about 1:00 p.m. on September 26,
2009.  Of these calls, Teresa said, “Those
were the only ones . . .  that I got recorded.  If I would have kept up with it, there would
have been more.”  From these rounds of
telephone calls came the voice messages, which the Chunns presented to police
and which were introduced into evidence.  


            We
find in the instant situation, the telephone calls and voice messages described
by the Chunns, as well as the few actually recorded and introduced into
evidence, could qualify as “repeated” as that term is used in the statute.[6]  Lee has failed to establish the statute is
vague as applied to her situation.  We
overrule Lee’s first point of error.  

III.       Sufficiency of the
Evidence

            In
her second point of error, Lee claims the evidence is legally insufficient to
support the trial court’s verdict.  In
reviewing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the jury’s verdict to determine whether any
rational jury could have found the essential elements of the charged offense.  Brooks
v. State, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (4-1-4 decision)
(citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)); Hartsfield v. State,
305 S.W.3d 859, 863 (Tex. App.––Texarkana 2010, pet. ref’d) (citing Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007)).  Our rigorous
legal sufficiency review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917–18 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.”  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318–19).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically-correct jury charge.  Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).[7]  As charged in the information, the State was
required to prove that (1) on or about September 26, 2009, (2) Lee, with intent
to harass, annoy, alarm, abuse, torment, or embarrass Chunn, (3) sent repeated
voice message communications to Chunn, (4) in a manner reasonably likely to
harass, annoy, alarm, abuse, torment, embarrass, or offend another person.  Tex.
Penal Code Ann. § 42.07(a)(4).   

            Lee
argues that the evidence is legally insufficient to prove that she had the
specific intent to harass, annoy, alarm, abuse, torment, or embarrass
Chunn.  Intent may be inferred from
circumstantial evidence such as acts, words, and the conduct of the appellant.  Guevara,
152 S.W.3d at 50.  While it is true that
only five of the messages were introduced into evidence to prove the
information’s charge that Lee harassed Chunn by leaving voice messages, there
was also testimony that Lee left many more messages than were preserved and
presented to Detective Stubblefield.  Teresa
said she only preserved the five messages she presented to Stubblefield, but
there were more.  Although Chunn said
that Lee had left fifteen to fifty messages, he did not specify a time
period.  Also, Chunn and Teresa both said
there were a high number of calls, with Chunn estimating fifty to a
hundred.  The testimony heard by the
court was that Lee had made multiple calls to Chunn at work and Chunn said he had
lost one job due to Lee’s calls.  Lee
told Stubblefield that she contacted one of Chunn’s employers to tell the
employer Chunn had falsified a drug test. 
This allegation, in addition to the number of calls and messages over
time, support an inference that the messages Lee left on or about September 26 were
made with the intent to harass, annoy, alarm, abuse, torment, or embarrass
Chunn.   

            Both
of the Chunns used the word “annoy” to describe their feelings about Lee’s
conduct in making the calls and leaving the messages.  Chunn said the calls were “very annoying”;
and Teresa said she was annoyed by Lee and her conduct.  Chunn and Teresa both said they told Lee not
to call “several times” because Chunn did not want to speak to Lee.  Listening to the recordings of the messages
admitted into evidence could further yield an inference they were made with the
intent to harass, annoy, abuse, torment, or embarrass Chunn.  Two of the messages are rambling professions
of Lee’s love for Chunn and her regret that their relationship had terminated.  Both Chunns testified that Lee’s repeated
calls and messages placed a strain on their relationship, and both said the
calls did not begin or at least achieve the high number until Lee became aware
of the relationship which existed between Chunn and Teresa.  There was evidence the Chunns contacted Lee
and asked her to cease her calls.  Lufkin
Police Officer Stephen Dickens testified he told Lee on June 19, 2009, that
Chunn wanted her contacts to cease, and Dickens asked Lee not to call Chunn any
more.  Likewise, Detective Stubblefield
also said that he had told Lee to stop contacting Chunn.  Although Stubblefield did not say exactly
when he told Lee to stop, he said that he told her before the interview with
her which occurred on October 5, 2009, and “prior to the last set of phone
calls that were made.”   

            Viewed
in totality, a rational finder of fact could conclude that Lee had the intent
to harass, annoy, alarm, torment, or embarrass Chunn (even if the content of
the calls, when contact was made, consisted of professions of love and pleas
for forgiveness), and that she made repeated telephone communications[8]
reasonably likely to harass, alarm, annoy, abuse, torment, embarrass, or offend
Chunn.  The evidence is sufficient to
support the trial court’s judgment.  Lee’s
second point of error is overruled.

            We
affirm the trial court’s judgment.   

 

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          December 30, 2010

Date Decided:             January 14, 2011

 

Do Not Publish











[1]Tex. Penal Code Ann. § 42.07 (Vernon
2003).

 





[2]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[3]The
record does not indicate when these messages were left.  The five messages appear in two files on the
compact disc.  The first file is a single
message; at the beginning of this message, an automated voice states the length
of the message and reads a time and date of 11:07 a.m., on August 11,
2009.  The other file contains five
messages which play one after another. 
At the beginning of the messages, the automated voice says 3:20 p.m.,
September 29, 2009.  From witness
testimony, it seems that William or Teresa Chunn brought their cell phone to
Detective Stubblefield, who transferred those messages to his computer or
recorded them as the messages were played for him.  





[4]Earlier
this year, the Texas Court of Criminal Appeals found Section 42.07(a)(4) did
not implicate the free speech guarantees of the First Amendment, and the
statute was not unconstitutionally vague on its face.  Scott v. State, 322 S.W.3d
662, 669–70 (Tex. Crim. App. 2010). 





[5]If
Lee is complaining about the sufficiency of the evidence to prove intent, it is
an oft-cited tenet of criminal law that intent may be inferred from one’s acts or
words.  Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  Based on the number of calls and messages and
the span of time over which they occurred, and evidence Lee was told on many
occasions by the Chunns and police to cease her attempts to contact Chunn,
there was ample evidence from which the trier of fact could find evidence of
Lee’s intent.  This contention is
addressed in Lee’s second point of error. 






[6]Lee
then goes on to claim there is insufficient evidence to support a finding the
voice messages were meant to annoy, alarm, abuse, torment, embarrass, or offend
the recipient, as those terms were discussed in Scott.  See Scott, 322 S.W.3d at
669 n.13.  A challenge to the sufficiency
of the evidence is different from a claim the statute is vague as applied to
Lee.  Regardless of how we construe what
is arguably a multifarious point of error, Lee has not explained how, much less
demonstrated, that Section 42.07 of the Texas Penal Code is vague as applied to
her.  





[7]This
test is used for bench trials as well as jury trials.  Malik,
953 S.W.2d at 240.





[8]The
Texas Court of Criminal Appeals in Scott
concluded text of Section 42.07(a)(4) “suggests that it covers ordinary voice
(and therefore voice mail) communication involving an ordinary telephone.”  Scott,
322 S.W.3d at 668.  Lee does not question
whether the use of “voice messages” in the charging instruments alleges an
offense under Section 42.07(a)(4).