

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0469-19

## EX PARTE NATHAN SANDERS, Appellant

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SEVENTH COURT OF APPEALS LUBBOCK COUNTY

WALKER, J., delivered the opinion of the Court, in which HERVEY, RICHARDSON, YEARY, and NEWELL, JJ., joined. YEARY, J., filed a concurring opinion. KELLER, P.J., filed a dissenting opinion, in which KEEL, J., joined. SLAUGHTER and McCLURE, JJ., dissented.

### O P I N I O N

In *Scott v. State*, we held that § 42.07(a)(4) of the Penal Code, the telephone harassment statute, does not implicate the freedom of speech protections of the First Amendment of the United States Constitution because it prohibits non-speech conduct. 322 S.W.3d 662, 669–70 (Tex. Crim. App. 2010), *disavowed on other grounds by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). In the case before us today, we clarify and reaffirm our holding in *Scott*. Following *Scott*'s precedent, we hold that § 42.07(a)(7) of the Penal Code, the electronic harassment statute, also fails

to implicate the First Amendment's freedom of speech protections because it too prohibits non-speech conduct. We affirm the judgment of the court of appeals upholding § 42.07(a)(7) against Appellant's First Amendment challenge.

## I — Background

Nathan Sanders, Appellant, was charged with violating Penal Code § 42.07(a)(7), the electronic harassment statute, which provides:

(a)     A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(7)     sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 42.07, 1973 Tex. Gen. Laws 883, 956–57 (amended 2013)[1] (current version at TEX. PENAL CODE Ann. § 42.07(a)(7)).[2] Appellant filed a pre-trial application for habeas corpus relief on the basis that the statute was unconstitutionally overbroad. The trial court denied relief, and the court of appeals affirmed. *Ex parte Sanders*, No. 07-18-00335-CR, 2019 WL 1576076, at *1 (Tex. App.—Amarillo Apr. 8, 2019) (mem. op., not

---

[1]  Appellant's case is governed by the 2013 version of the electronic harassment statute. Accordingly, while we will reference the statute with its current citation, this opinion refers to the 2013 version.

[2]     "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system. The term includes:

(A)     a communication initiated by electronic mail, instant message, network call, or facsimile machine; and

(B)     a communication made to a pager.

TEX. PENAL CODE Ann. § 42.07(b)(1).

designated for publication). The court of appeals determined that, for First Amendment purposes, § 42.07(a)(7) was the same as § 42.07(a)(4) which we upheld against a similar First Amendment challenge in *Scott*. *Id.* at *2–3. The appellate court concluded that *Scott* was controlling and rejected Appellant's First Amendment challenge. *Id.* at *3–4.

We granted Appellant's petition for discretionary review which argues that § 42.07(a)(7) violates the First Amendment and that *Scott* should be overruled.[3]

## II — Appellant's Pre-Trial Writ

Before we address the substance of Appellant's challenge, we begin with the State's threshold argument that Appellant's ground for review is not properly before us. The State points out that Appellant did not raise *Scott* before the trial court in his pre-trial application for writ of habeas corpus. The State also faults Appellant for failing to make a proper First Amendment overbreadth argument in his pre-trial application. As the State sees it, Appellant's ground for review is not adequately presented, and any opinion on the constitutionality of § 42.07(a)(7) or regarding *Scott* would be advisory.

It is well-established that a decision of the trial court may be affirmed if it is correct on any applicable theory of law—even if that theory was not presented to the trial court. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Penry v. State*, 903 S.W.2d 715, 750 n.34 (Tex. Crim. App. 1995). It is also well-established that "[i]n our discretionary review capacity we review

---

[3] Appellant's ground for review specifically states:

Texas Penal Code section 42.07(a)(7) is a content-based restriction that restricts a real and substantial amount of speech as protected by the First Amendment; speech which invades privacy interests of the listener has never been held by the United States Supreme Court to be a category of unprotected speech.

'decisions' of the courts of appeals." *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (quoting *Lee v. State*, 791 S.W.2d 141, 142 (Tex. Crim. App. 1990)); TEX. R. APP. P. 66.1. Thus, it is not dispositive that a party may not have preserved an issue in the trial court where the court of appeals properly addressed the issue, and we granted discretionary review of it. *Gallups v. State*, 151 S.W.3d 196, 199 n.3 (Tex. Crim. App. 2004).

The court of appeals affirmed the trial court, finding that § 42.07(a)(7) is constitutional based on *Scott*. Appellant challenges the court of appeals's decision and its underlying basis in *Scott*. *Scott* was properly addressed by the court of appeals. *Scott*'s holding was relevant to § 42.07(a)(7), several other courts of appeals that considered the constitutionality of § 42.07(a)(7) relied on *Scott*, and both parties argued the applicability of *Scott* in their respective appellate briefs. Accordingly, Appellant's ground for review is properly before us, regardless of whether Appellant's pre-trial application raised *Scott* or presented an adequate First Amendment overbreadth argument.

### III — *Scott v. State*

The court of appeals, following the lead of several other appellate courts,[4] upheld § 42.07(a)(7) by relying upon *Scott v. State*. In *Scott*, the defendant argued that § 42.07(a)(4), the telephone harassment statute, is unconstitutionally "vague and overbroad" in violation of the First Amendment. *Scott*, 322 S.W.3d at 665. This statute provided:

> (a)    A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

---

[4] *Lebo v. State*, 474 S.W.3d 402, 408 (Tex. App.—San Antonio 2015, pet. ref'd); *Ex parte Ogle*, No. 03-18-00207-CR, 2018 WL 3637385, at *7 (Tex. App.—Austin Aug. 1, 2018, pet. ref'd) (mem. op., not designated for publication); *Ex parte Reece*, No. 11-16-00196-CR, 2016 WL 6998930, at *3 (Tex. App.—Eastland Nov. 30, 2016, pet. ref'd) (mem. op., not designated for publication); *Blanchard v. State*, No. 03-16-00014-CR, 2016 WL 3144142, at *3–4 (Tex. App.—Austin June 2, 2016, pet. ref'd) (mem. op., not designated for publication).

(4)     causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]

Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, sec. 42.07, 1973 Tex. Gen. Laws 883, 956–57 (amended 2001) (current version at TEX. PENAL CODE Ann. § 42.07(a)(4)). We concluded that the 2001 version of § 42.07(a)(4) is not susceptible to being considered communicative conduct protected by the First Amendment because the statute criminalized harassing conduct that, although it may include spoken words, was essentially noncommunicative. *Scott*, 322 S.W.3d at 669–70.[5] Furthermore, we determined that "persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake." *Id.* at 670. We held that § 42.07(a)(4) did not implicate the First Amendment, and, accordingly, Scott failed to show it was unconstitutionally vague on its face. *Id.* at 669, 670–71.

Additionally, we noted that while the First Amendment "generally protects the free communication and receipt of ideas, opinions, and information," the "State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner." *Id.* at 668–69. Therefore, if the conduct was, in fact, communicative:

To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.

---

[5] In 2013, § 42.07(a) was amended to change "he" to "the person". Act of May 22, 2013, 83d Leg., R.S., ch. 1278, § 1, 2013 Tex. Gen. Laws 3231, 3231 (current version at TEX. PENAL CODE Ann. § 42.07(a)).

*Id.* at 670. In other words, communicative conduct—speech—that invades the substantial privacy interests of another in an essentially intolerable manner is outside the protection of the First Amendment. This particular discussion in *Scott* is the crux of Appellant's argument before us today.

### IV — *Scott* and § 42.07(a)(7)

In considering Appellant's case below, the court of appeals determined that the text of the electronic harassment statute, § 42.07(a)(7), is—for the purposes of First Amendment analysis— identical to § 42.07(a)(4):

> As others have pointed out . . . all subsections of section 42.07(a) require the same specific intent, that "to harass, annoy, alarm, abuse, torment, or embarrass another." And while subsection (a)(4) is violated when the actor "makes" repeated telephone communications and (a)(7) is violated when the actor "sends" repeated electronic communications, both subsections require for guilt that the repeated communications occur "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another."

*Sanders*, 2019 WL 1576076, at *3. Appellant also notes that although *Scott* was concerned with the telephone harassment statute instead of the electronic harassment statute, "the rationale is the same."[6]

We agree with the court of appeals's reliance on *Scott*. For First Amendment purposes, *Scott*'s holding that § 42.07(a)(4), the telephone harassment statute, does not implicate the First Amendment should apply equally to § 42.07(a)(7), the electronic harassment statute. Accordingly, if *Scott* is still good law, then § 42.07(a)(7) does not implicate the First Amendment.

### V — Should *Scott* be Overruled?

Appellant argues that *Scott* should be reconsidered because our opinion in that case "created, *ex nihilo*, a new category of unprotected speech: speech which, for purposes of inflicting emotional

---

[6] Pet'r's Br. 19.

distress, invades substantial privacy interests."[7] Appellant would have us overrule *Scott* and, in the absence of *Scott*, hold that § 42.07(a)(7) is unconstitutional.

"We ordinarily observe the doctrine of *stare decisis* 'to promote judicial efficiency and consistency, encourage reliance on judicial decisions, and contribute to the integrity of the judicial process.'" *Garcia v. State*, 614 S.W.3d 749, 754 (Tex. Crim. App. 2019) (quoting *Paulson v. State*, 28 S.W.3d 570, 571 (Tex. Crim. App. 2000)). Accordingly, we "should not frivolously overrule established precedent." *Ex parte Thomas*, 623 S.W.3d 370, 381 (Tex. Crim. App. 2021). However, "*stare decisis* is not an inexorable command." *Id.* "While there is a strong presumption in favor of established law," we may reconsider our precedent "when, for instance, the original rule or decision was flawed from the outset, produces inconsistent, unjust, or unanticipated results or places unnecessary burdens on the system." *Id.* In other words, "we are not constrained to follow precedent that is wrongly decided or unworkable." *Id.* at 382. Adhering to such precedent does not further *stare decisis*'s goals of promoting judicial efficiency and consistency, encouraging reliance upon judicial decisions, or contributing to the integrity of the judicial process. *Id.* at 381–82. Thus, while "precedent warrants 'deep respect as embodying the considered views of those who have come before' . . . '*stare decisis* [is not] supposed to be the art of methodically ignoring what everyone knows to be true.'" *Id.* at 382 (quoting *Ramos v. Louisiana*, 140 S.Ct. 1390, 1404–05 (2020)).

### VI — The Core Holding of *Scott*

Appellant argues that *Scott* should be overruled because: (1) in *Stevens*, the Supreme Court

---

[7] Pet'r's Br. 19.

emphasized that courts are not free to declare categories of unprotected speech;[8] (2) in *Alvarez*, the Supreme Court listed the categories of unprotected speech, which did not include intentional harassment;[9] and (3) in *Scott*, we relied upon dicta to declare a category of speech outside the protection of the First Amendment.

As discussed above, in *Scott* we noted that "[t]he State may lawfully proscribe communicative conduct (i.e., the communication of ideas, opinions, and information) that invades the substantial privacy interests of another in an essentially intolerable manner." *Scott*, 322 S.W.3d at 668–69 (citing *Cohen v. California*, 403 U.S. 15, 21 (1971)).[10] And if the conduct was, in fact,

---

[8] Appellant points to the following admonition in *Stevens*: "Our decisions in *Ferber* and other cases cannot be taken as establishing a freewheeling authority to declare new categories of speech outside the scope of the First Amendment." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (referring to *New York v. Ferber*, 458 U.S. 747, 764 (1982) (holding child pornography outside the protection of the First Amendment)); *see also United States v. Alvarez*, 567 U.S. 709, 722 (2012) ("Although the First Amendment stands against any 'freewheeling authority to declare new categories of speech outside the scope of the First Amendment,'. . . .") (quoting *Stevens*, 559 U.S. at 472)).

[9] In *Alvarez*, the Supreme Court listed historical categories of speech that are outside the protection of the First Amendment:

> content-based restrictions on speech have been permitted, as a general matter, only when confined to the few "'historic and traditional categories [of expression] long familiar to the bar.'" . . . Among these categories are advocacy intended, and likely, to incite imminent lawless action . . . obscenity . . . defamation . . . speech integral to criminal conduct . . . so-called "fighting words," . . . child pornography . . . fraud . . . true threats . . . and speech presenting some grave and imminent threat the government has the power to prevent . . . although a restriction under the last category is most difficult to sustain . . . . These categories have a historical foundation in the Court's free speech tradition. The vast realm of free speech and thought always protected in our tradition can still thrive, and even be furthered, by adherence to those categories and rules.

*Alvarez*, 567 U.S. at 717–18.

[10] Appellant criticizes our citation to *Cohen* as reliance on dicta.

communicative:

> To the extent that the statutory subsection is susceptible of application to communicative conduct, it is susceptible of such application only when that communicative conduct is not protected by the First Amendment because, under the circumstances presented, that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.

*Id.* at 670.

Appellant takes these statements from *Scott* to be our holding, and he contends that we improperly created a category of speech outside the protection of the First Amendment. In response, the State begins its brief noting that "the core holding of *Scott*" was that "harassment . . . covered by Texas Penal Code 42.07 is non-communicative conduct that does not implicate the First Amendment."[11] In his Reply Brief, Appellant, again quoting the above language in *Scott*, complains that "[t]he State even gets *Scott*'s holding wrong."[12]

We disagree. A plain reading of *Scott* shows that we did not hold that the conduct proscribed by § 42.07(a)(4) constituted speech categorically outside the protection of the First Amendment. We held that it was not speech at all.

In *Scott*, the State raised six grounds for review, which we granted:

(1) Are subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 unconstitutionally vague?

(2) Do subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 implicate the First Amendment to the United States Constitution?

(3) Are the term "repeated" and the phrase "in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another," which are both contained within Texas Penal Code § 42.07(a)(4) and (a)(7), unconstitutionally

---

[11]  State's Br. on the Merits 1.

[12]  Pet'r's Reply Br. 12–13.

vague?

(4) Did the State's allegation that appellant left "voice mail messages" implicate Texas Penal Code § 42.07(a)(7) in this case, and does that phrase necessarily fall within the definition of "electronic communication" found at Texas Penal Code § 42.07(b)(1)?

(5) If some part of Texas Penal Code § 42.07 is unconstitutionally vague, did the Court of Appeals err by declaring it vague and acquitting appellant instead of applying a narrow construction to the statute to avoid the alleged vagueness?

(6) Has the Court of Appeals improperly determined that because subsections (a)(4) and (a)(7) of Texas Penal Code § 42.07 allegedly implicate the First Amendment and might curtail protected speech those subsections are vague, when the proper question should have been whether the subsections are overbroad?

*Scott*, 322 S.W.3d at 667–68, n.9. However, we only addressed two of those grounds. *Id.* at 670 ("Given our disposition of the State's second and fourth grounds for review, we need not reach the State's remaining grounds for review. We dismiss them."). We first discussed the State's fourth ground for review, which argued that the court of appeals erred in addressing the constitutionality of § 42.07(a)(7), the electronic harassment statute. *Id.* at 668. The court of appeals had found that the information language,[13] alleging that the defendant had left abusive and harassing voicemail messages, fell within the statutory definition of electronic communication. *Id.* at 667. As a result,

---

[13] The defendant in *Scott* was charged by two informations. The second information alleged that:

on or about the 12th Day of March, 2006, Samuel Scott, hereinafter referred to as defendant, with intent to harass, annoy, alarm, abuse, torment, and embarrass Yvette Scott, hereinafter referred to complainant, did make repeated telephone communications to the complainant in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass and offend the complainant, to wit: the defendant called the complainant repeatedly by telephone while intoxicated, late at night, leaving abusive and harassing voice mail messages.

*Scott*, 322 S.W.3d at 665.

the court of appeals considered the constitutionality of both § 42.07(a)(4) and (a)(7). *See id.* at 667.

We agreed with the State's argument and sustained the ground because the information tracked the language of § 42.07(a)(4), not (a)(7), and because the statutory text of § 42.07(a)(4) seemed to cover ordinary voice (and therefore voicemail), whereas the text of (a)(7) seemed to cover non-telephonic messages such as e-mail and instant messages. *Id.* at 668.

After sustaining that ground, we turned to the State's second ground for review, which argued "that the court of appeals erred in concluding that § 42.07(a)(4) implicated the free-speech guarantee of the First Amendment." *Id.* at 668.[14] It was important to address "[t]he question of whether the statutory subsection implicate[d] the free-speech guarantee . . . because if the statutory subsection *does* implicate the free-speech guarantee, then Scott, in making his vagueness challenge, is relieved of the usual requirement of showing that the statutory subsection was unduly vague as applied to his conduct." *Id.* We then proceeded "[t]o answer the question of whether § 42.07(a)(4) implicates the free-speech guarantee of the First Amendment[.]" *Id.* After examining the text of the statute,

> we conclude[d] that it is not susceptible of application to communicative conduct that is protected by the First Amendment. In other words, *the statutory subsection does not implicate the free-speech guarantee of the First Amendment*. . . . [W]e believe that the *conduct* to which the statutory subsection is susceptible of application will be, in the usual case, essentially *noncommunicative*, even if the *conduct* includes spoken words.

*Id.* at 669–70 (emphasis added). Finally, returning to the matter of vagueness, we ended our *Scott* opinion by stating: "*Because § 42.07(a)(4) does not implicate the free-speech guarantee of the First Amendment*, Scott, in making his vagueness challenge to that statutory subsection, was required to

---

[14] We note that the State's second ground in *Scott* also challenged the court of appeals's constitutionality ruling as to § 42.07(a)(7). *Id.* at 667–68 n.9. Due to our resolution of the State's fourth ground, the court of appeals's decision regarding § 42.07(a)(7) was no longer at issue.

show that it was unduly vague as applied to his own conduct." *Id.* at 670–71 (emphasis added).

The core holding of our opinion in *Scott* is that the conduct regulated by § 42.07(a)(4) is noncommunicative and does not implicate the free-speech guarantee of the First Amendment. The core holding was not that § 42.07(a)(4) regulates speech unprotected by the First Amendment. A regulation involving non-protected speech nevertheless still implicates the First Amendment and can still be subject to First Amendment scrutiny, as explained by the Supreme Court in *R.A.V. v. City of St. Paul, Minnesota*:

> We have sometimes said that these categories of expression [obscenity, defamation, and fighting words] are "not within the area of constitutionally protected speech," . . . or that the "protection of the First Amendment does not extend" to them . . . Such statements must be taken in context, however, and are no more literally true than is the occasionally repeated shorthand characterizing obscenity "as not being speech at all[.]" . . . What they mean is that these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* (obscenity, defamation, etc.)—not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content. Thus, the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government.

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 383–84 (1992). The Supreme Court elaborated:

> Our cases surely do not establish the proposition that the First Amendment imposes no obstacle whatsoever to regulation of particular instances of such proscribable expression, so that the government "may regulate [them] freely," . . . That would mean that a city council could enact an ordinance prohibiting only those legally obscene works that contain criticism of the city government or, indeed, that do not include endorsement of the city government. Such a simplistic, all-or-nothing-at-all approach to First Amendment protection is at odds with common sense and with our jurisprudence as well.

*Id.* at 384. The Supreme Court proceeded to hold that the ordinance at issue in the case was facially invalid under the First Amendment, although it regulated "fighting words." *Id.* at 381. Thus, simply because the ordinance at issue covered unprotected speech did not mean that the ordinance could not

be subject to First Amendment scrutiny. To the contrary, the Supreme Court applied First Amendment strict scrutiny because (its coverage of "fighting words" notwithstanding) it proscribed only those "fighting words" that insult or provoke violence "on the basis of race, color, creed, religion or gender." *Id.* at 391. It did not prohibit "fighting words" in connection with other ideas, such as expressing hostility on the basis of political affiliation, union membership, or homosexuality. *Id.* Accordingly, the ordinance imposed a special prohibition on speakers who expressed views on disfavored subjects. *Id.* This went beyond mere content discrimination to actual viewpoint discrimination. *Id.*

As illustrated by *R.A.V.*, a statute that covers speech in a category traditionally outside the protection of the First Amendment nevertheless still implicates the First Amendment. In the absence of speech, whether protected or unprotected, the First Amendment is not implicated. When we held in *Scott* that the conduct regulated by § 42.07(a)(4) does not implicate the First Amendment because the conduct governed by § 42.07(a)(4) is noncommunicative, we meant it. It is not speech.

Therefore, the discussion Appellant complains of, wherein we referred to the State's ability to restrict communications that invade another's privacy interests in an essentially intolerable manner, was—at the very least—a recognition of the legitimate governmental purpose to which the statute bears a rational relationship. *See Romer v. Evans*, 517 U.S. 620, 631 (1996) (stating standard of review for upholding statutes that neither burden a fundamental right nor target a suspect class). At the most, we posed an alternative theory to support our judgment that the statute did not violate the First Amendment. But even on that basis, it was not *Scott*'s holding, or even an alternative

holding.[15] Aside from the brief mention of the theory, our disposition of the State's second ground for review in *Scott* was based squarely on our conclusion that § 42.07(a)(4) regulated non-speech conduct, even if that conduct included the use of words. We did not carve a category of speech out from the protections of the First Amendment. Appellant's retort in his Reply Brief has it backwards—the State gets *Scott*'s holding right.[16]

### VII — *Scott* Was Not Wrongly Decided and Is Not Unworkable

Our clarification of *Scott*'s holding—that the telephone harassment statute, § 42.07(a)(4), regulates non-speech conduct and therefore does not implicate the First Amendment—puts to bed Appellant's specific reasons for overruling the case. But, as explained above, a precedent may be overruled if it was wrongly decided or has proven to be unworkable. *Thomas*, 623 S.W.3d at 382. Appellant is not the only one to suggest that *Scott* was wrongly decided and should be reconsidered. *See Scott*, 322 S.W.3d at 671 (Keller, P.J., dissenting); *Wilson*, 448 S.W.3d at 426–27 (Keller, P.J., concurring) ("[W]e ought to, when the issue is raised again, re-evaluate our holding in [*Scott*]."); *Ex*

---

[15] We have previously suggested that an alternative holding "could be viewed as mere *dicta*." *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997). However, we have never explicitly held as much. *See Duran v. State*, 492 S.W.3d 741, 754 n.1 (Tex. Crim. App. 2016) (Yeary, J., concurring and dissenting) ("So far as I know, this Court has yet to fashion a rule—one way or the other—with respect to the precedential value of alternative holdings."). Our sister court, the Supreme Court of Texas, has clearly stated that alternative holdings are binding. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 502 (Tex. 2015) ("[A]lternative holdings . . . are . . . entitled to *stare decisis* treatment[.]").

Whatever may be said regarding the precedential value of alternative holdings, what is clear in this case is that the theory stated in *Scott*—that if it were communicative conduct, "that communicative conduct is not protected by the First Amendment because . . . that communicative conduct invades the substantial privacy interests of another (the victim) in an essentially intolerable manner"—was not even an alternative holding.

[16] *Contra* Pet'r's Reply Br., at 12 ("The State even gets *Scott*'s holding wrong.").

*parte Reece*, 517 S.W.3d 108, 110 (Tex. Crim. App. 2017) (Keller, P.J., dissenting to refusal of petition for discretionary review) ("The second reason to grant review is to re-examine *Scott*."); *Ogle v. State*, 563 S.W.3d 912, 912 (Tex. Crim. App. 2018) (Keller, P.J., dissenting to refusal of petition for discretionary review).

We conclude that *Scott* was neither wrongly decided nor unworkable, and we decline the suggestion to overrule it. We find no fault in our holding that § 42.07(a)(4), the telephone harassment statute, regulates non-speech conduct and therefore does not implicate the First Amendment.

"The First Amendment literally forbids the abridgment only of 'speech[.]'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989). However, the First Amendment's "protection does not end at the spoken or written word." *Id.* "[T]he Constitution looks beyond written or spoken words as mediums of expression." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995). For example, "[s]ymbolism is a primitive but effective way of communicating ideas." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943). Accordingly, "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments[.]'" *Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 409 (1974)).

However, "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 576 (1991) (Scalia, J., concurring) ("[V]irtually *every* law restricts conduct, and virtually *any* prohibited conduct can be performed for an expressive purpose—if only expressive of the fact that

the actor disagrees with the prohibition."). Thus, the Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). Instead, First Amendment protection extends "only to conduct that is inherently expressive." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (*FAIR*). To determine "whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," the question to ask is "whether 'an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it.'" *Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 410–11)). But "a 'particularized message'" is not required, or else the freedom of speech "would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley*, 515 U.S. at 569. The answer to the question oftentimes depends on the circumstances surrounding the conduct. "[T]he context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." *Spence*, 418 U.S. at 410.

Where the conduct does not have a significant expressive element, then "the First Amendment is not implicated by the enforcement of a [law] of general application[.]" *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706–07 (1986). Such laws, applicable to "nonexpressive conduct," do not "[have] anything to do with the First Amendment." *See Virginia v. Hicks*, 539 U.S. 113, 123 (2003) (holding that city policy authorizing police to bar non-residents from low income housing development and thereafter arrest individuals violating barment order for trespassing did not violate First Amendment, even if trespasser sought to engage in speech); *Arcara*, 478 U.S. at 706–07

(finding that enforcement of statute authorizing closure of premises used for prostitution did not violate First Amendment as applied to bookstore; even though bookstore sold books, such activity did not confer First Amendment protection to prostitution activity occurring on the premises). "Any other conclusion would lead to the absurd result that any government action that had some conceivable speech-inhibiting consequences, such as the arrest of a newscaster for a traffic violation, would require analysis under the First Amendment." *Arcara*, 478 U.S. at 708 (O'Connor, J., concurring).

Thus:

> [N]onverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.

*R.A.V.*, 505 U.S. at 385.

Delineating and applying the above principles, the Supreme Court has recognized a wide array of conduct as expressive, including displaying a red flag "as a sign, symbol, or emblem of opposition to organized government[;]"[17] saluting and *not* saluting the flag;[18] conducting a silent sit-in;[19] burning a draft card in demonstration against the war and the draft;[20] wearing black armbands to object to the hostilities in Vietnam;[21] displaying the flag upside down with a "peace symbol" made

---

[17] *Stromberg v. California*, 283 U.S. 359, 369 (1931).

[18] *Barnette*, 319 U.S. at 632–34, 642.

[19] *Brown v. Louisiana*, 383 U.S. 131, 141–42 (1966).

[20] *O'Brien*, 391 U.S. at 376.

[21] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 504–06 (1969).

of black tape affixed to the flag to express that America stood for peace after the Cambodian invasion and the Kent State massacre;[22] camping in Lafayette Park and the National Mall to call attention to the plight of the homeless;[23] burning the flag during a protest rally;[24] nude dancing;[25] marching in a parade;[26] organizing and choosing the participants in a parade;[27] and cross-burning.[28]

In comparison, the Supreme Court found the conduct in *FAIR* was not inherently expressive and thus did not implicate the First Amendment. *FAIR*, 547 U.S. at 66. In that case, an association of law schools and law school faculties, opposed to the military's policy on homosexuals, began restricting access to military recruiters for on-campus interviews. *Id.* at 51. In response, Congress enacted the Solomon Amendment which stripped federal funding from institutions that denied access to military recruiters. *Id.* The law schools and faculties sought a preliminary injunction against the application of the Solomon Amendment, arguing that the law put them to the choice of exercising their First Amendment rights or ensuring federal funding for their universities. *Id.* at 52–53.

Among other arguments, the Supreme Court "consider[ed] whether the expressive nature of the *conduct* regulated by the statute brings that conduct within the First Amendment's protection." *Id.* at 65 (emphasis in original). The Supreme Court determined that:

---

[22] *Spence*, 418 U.S. at 409–10.

[23] *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming, without deciding, that conduct was expressive).

[24] *Johnson*, 491 U.S. at 406.

[25] *Barnes*, 501 U.S. at 565–66.

[26] *Hurley*, 515 U.S. at 569–70.

[27] *Id.* at 574–75.

[28] *Virginia v. Black*, 538 U.S. 343, 360–61 (2003).

> Unlike flag burning, the conduct regulated by the Solomon Amendment is not inherently expressive. . . . [L]aw schools "expressed" their disagreement with the military by treating military recruiters differently from other recruiters. But these actions were expressive only because the law schools accompanied their conduct with speech explaining it. For example, the point of requiring military interviews to be conducted on the undergraduate campus is not "overwhelmingly apparent." . . . An observer who sees military recruiters interviewing away from the law school has no way of knowing whether the law school is expressing its disapproval of the military, all the law school's interview rooms are full, or the military recruiters decided for reasons of their own that they would rather interview someplace else.

> The expressive component of a law school's actions is not created by the conduct itself but by the speech that accompanies it. The fact that such explanatory speech is necessary is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection. . . .

*Id.* at 66.

Similarly, in *Carrigan*, the Supreme Court considered a recusal provision in a Nevada governmental ethics law that requires public officials to recuse themselves from voting on, or advocating the passage or failure of, a matter the official has a personal interest in. *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 119, 121 (2011). The Nevada Supreme Court determined that the law violated the First Amendment, finding that a legislator's vote is protected speech. *Id.* at 121.

Reversing, the United States Supreme Court considered several arguments—including the contention raised by the concurrence "that legislators often 'use their votes to express deeply held and highly unpopular views, often at great personal or political peril.'" *Id.* at 126 (quoting *id.* at 133 (Alito, J., concurring)). Invoking the reasoning of *FAIR*, the Supreme Court majority responded:

> How do they express those deeply held views, one wonders? Do ballots contain a check-one-of-the-boxes attachment that will be displayed to the public, reading something like "( ) I have a deeply held view about this; ( ) this is probably desirable; ( ) this is the least of the available evils; ( ) my personal view is the other way, but my constituents want this; ( ) my personal view is the other way, but my big contributors want this; ( ) I don't have the slightest idea what this legislation does, but on my way in to vote the party Whip said vote 'aye'"? There are, to be sure, instances where

> action conveys a symbolic meaning—such as the burning of a flag to convey disagreement with a country's policies . . . But the act of voting symbolizes nothing. It *discloses*, to be sure, that the legislator wishes (for whatever reason) that the proposition on the floor be adopted, just as a physical assault discloses that the attacker dislikes the victim. But neither the one nor the other is an act of communication. Cf. [*FAIR*, 547 U.S. at 66] (expressive value was "not created by the conduct itself but by the speech that accompanies it").

*Id.* at 126–27.

Turning to the conduct proscribed by § 42.07(a)(4), is such conduct inherently expressive? *See FAIR*, 547 U.S. at 66. Is an intent to convey a particularized message present? *See Johnson*, 491 U.S. at 404. Is the likelihood great that the message would be understood by those who viewed it? *See id.* Because Appellant's challenge to the statute came pre-trial, and there is no record evidence of conduct to examine for elements of expression, we return to the statute's literal text:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

> (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

TEX. PENAL CODE Ann. § 42.07(a)(4); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("[W]e necessarily focus our attention on the literal text of the statute in question[.]"). The § 42.07(a)(4) offense has three gravamen: causing the telephone of another to ring repeatedly (a result of conduct offense); making repeated telephone communications anonymously (a nature of conduct offense); and making repeated telephone communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another (a nature of conduct offense). *See generally Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015) (discussing gravamen of the offense).

Causing a telephone to ring repeatedly is not inherently expressive; there is no intent to convey a particularized message, nor is there any likelihood that an observer would understand a message from the conduct. *See FAIR*, 547 U.S. at 66; *Johnson*, 491 U.S. at 404.

As for the "makes repeated telephone communications anonymously" offense, we recognized in *Scott* that "the text [of the statute] does not require that the actor use spoken words." *Scott*, 322 S.W.3d at 669. Repeated calls where the anonymous caller says nothing at all, or where the calls contain indistinct noise, would constitute the making of "repeated telephone communications." An observer would not comprehend any communicative message from those calls. *See Johnson*, 491 U.S. at 404.

Finally, regarding the "makes repeated telephone communications in a manner reasonably likely to harass . . . " offense, the use of harassing, annoying, alarming, abusive, tormenting, embarrassing, or offending words could easily show the calls were made in a harassing, annoying, alarming, abusive, tormenting, embarrassing, or offending manner. Again, however, "the text [of the statute] does not require that the actor use spoken words." *Scott*, 322 S.W.3d at 669. Repeated telephone communications can be made in a harassing, annoying, alarming, abusive, tormenting, embarrassing, or offending manner without any words used at all. For example, if the telephone calls are consistently repeated or made during particularly inconvenient hours, such calls could very well be made in the prohibited manner, regardless of the content of those calls. And an observer, viewing such conduct, would not understand the calls to be portraying a message. *See Johnson*, 491 U.S. at 404.

The bare statutory conduct prohibited by § 42.07(a)(4) is distinct from the expressive conduct recognized by the Supreme Court. It does not involve symbols which carry special symbolic meaning

like the flag. *See, e.g.*, *Stromberg*, 283 U.S. 359; *Barnette*, 319 U.S. 624; *Spence*, 418 U.S. 405; *Johnson*, 491 U.S. 397. It does not involve acts that communicate an idea in light of societal context such as conducting a sit-in during the midst of the Civil Rights Movement, burning a draft card as part of an anti-war protest during the Vietnam War, or taping a peace sign to an upside down flag in the aftermath of the Kent State massacre. *See, e.g.*, *Brown*, 383 U.S. 131; *O'Brien*, 391 U.S. 367; *Spence*, 418 U.S. 405. It is not "closely akin to 'pure speech'" like wearing a black armband to show solidarity with the anti-war movement. *Tinker*, 393 U.S. at 505–06. It does not even occupy the outer limits of the First Amendment's protection where one would find nude dancing that communicates a message of eroticism. *Barnes*, 501 U.S. at 565–66.

Instead, statutory conduct covered by § 42.07(a)(4) fails to express any ideas at all. Like law schools requiring military recruiters to conduct their interviews on their undergraduate campus, or a legislator's vote, an observer viewing a person repeatedly make telephone calls would not perceive any expressive element by the calling alone. Is the caller trying to annoy the person who he is calling? Or is the caller sincerely trying to reach the person, wholly intending to have a conversation? The same is true when the observer views the conduct from the receiving end. An observer would not perceive any expressive message by witnessing a telephone ring repeatedly or by seeing a person receive repeated phone calls. There is no likelihood that those who view the bare statutory conduct of making repeated phone calls would understand any expressive message from this conduct. *See Johnson*, 491 U.S. at 404. The only way for observers to know that the caller means to express anything by these acts is for the caller to explain it to them; making repeated telephone calls is pure conduct that must be explained by separate speech. *See FAIR*, 547 U.S. at 66.

Nevertheless, Appellant argues that intentional harassment constitutes protected speech

because the speaker who intends to harass has a communicative intent. In other words, the speaker's intent to harass is an intent to communicate, and, if a speaker intends to communicate, his speech implicates the First Amendment.

The Supreme Court has "rejected the view that 'conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *FAIR*, 547 U.S. at 65–66 (quoting *O'Brien*, 391 U.S. at 376). Instead, First Amendment protection extends "only to conduct that is inherently expressive." *Id.* The Supreme Court's rejection is common sense. If the conduct is not inherently expressive, then an observer would not know that the conduct is intended to be expressive regardless of the actor's subjective intent.

Furthermore, even assuming that a person intending to harass, etc., by engaging in conduct covered by § 42.07(a)(4) accompanies that conduct with messages stating his intent to harass ("I want to harass you;" "I am going to harass you;" or "This is me harassing you"), that does not convert the conduct itself into speech. To the contrary, it remains non-speech conduct accompanied by explanatory speech. The Supreme Court cautioned that:

> If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into "speech" simply by talking about it. For instance, if an individual announces that he intends to express his disapproval of the Internal Revenue Service by refusing to pay his income taxes, we would have to apply *O'Brien* to determine whether the Tax Code violates the First Amendment. Neither *O'Brien* nor its progeny supports such a result.

*FAIR*, 547 U.S. at 66.

It is not difficult to imagine scenarios similar to the tax protestor. For example, assume a person driving his car on the highway intends to harass another driver. He drives his car aggressively, tailgates the other driver, quickly passes and cuts off that driver, repeatedly "brake checks," and, in

the course of doing so, makes several rude gestures and yells several epithets that unmistakably convey his feelings. The statutes in the Transportation Code governing driving do not become subject to the First Amendment simply because those driving acts were done to express anger at the other driver.

And, frankly, we need not even imagine. Would the government's power to punish the assassination of the President be subjected to modern First Amendment scrutiny simply because the assassin accompanied his act with speech ("*sic semper tyrannis*")? *See John Wilkes Booth Shoots Abraham Lincoln*, History (Nov. 13, 2009), www.history.com/this-day-in-history/john-wilkes-booth-shoots-abraham-lincoln. Would the government's power to punish the bombing and destruction of a federal building, resulting in 168 deaths and the wounding of hundreds more, be subjected to First Amendment scrutiny simply because the bomber intended to express a message against the federal government due to their "siege of the Branch Davidians in Waco"? *United States v. McVeigh*, 153 F.3d 1166, 1177–78 (10th Cir. 1998).

No one would doubt the government's power to assess taxes or prohibit reckless driving. No one would say the First Amendment stands to protect Presidential assassinations or allow for the deadliest act of domestic terrorism in American history. A statute or regulation proscribing non-speech conduct does not suddenly become subject to First Amendment scrutiny because the actor accompanies his non-speech conduct with speech.

In sum, we find that *Scott* was not wrongly decided, and *Scott* is not unworkable. We therefore decline Appellant's suggestion that we overrule *Scott*, and we reaffirm our holding that on its face, § 42.07(a)(4), the telephone harassment statute, proscribes non-speech conduct that does not implicate the protections of the First Amendment.

## VIII — § 42.07(a)(7)

As for § 42.07(a)(7), at issue in Appellant's case, that statute and subsection (b)(1) provide:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

(b) In this section:

(1) "Electronic communication" means a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system. The term includes:

(A) a communication initiated by electronic mail, instant message, network call, or facsimile machine; and

(B) a communication made to a pager.

TEX. PENAL CODE Ann. § 42.07(a)(7), (b)(1).

The gravamen of the § 42.07(a)(7) offense is the sending of repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another (nature of conduct). *See Price*, 457 S.W.3d at 441. Based upon the definition of "electronic communication," we find that this offense is like the § 42.07(a)(4) repeated telephone communication offense, and speech is not necessary for commission of the offense. "Electronic communication" consists of a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature. TEX. PENAL CODE Ann. § 42.07(b)(1). To be sure, some of those items, such as a writing, an image, and a sound, evoke traditional categories of communication. But the statute does not require the electronic communication to be a writing, an image, or a sound. By the literal text of the statute, the electronic communication that is sent could be in the form of "data . . . of any nature."

*Id.*; *see also Boykin*, 818 S.W.2d at 785.

The bare fact that data of any nature is sent electronically does not mean that anything has been expressed. The statute is equally violated by the repeated sending of communications containing expressive speech as it is by the repeated sending of communications containing no speech at all. A person intending to harass another could violate the statute by sending several e-mails containing only the letter "B" (arguably a "writing") or e-mails containing nothing (some minimal level of "data"). Or the person could violate the statute by sending computer code ("signals" or "data") that would be a readable sequence of machine language understood by a computer but entirely indecipherable and meaningless to humans. And there is no requirement that the data be actually usable. Entirely meaningless data understandable by neither man nor machine could just as well be sent, repeatedly, in a manner reasonably likely to harass, etc., with the specific intent to harass, etc.

But has anything been inherently expressed by such an act? *See FAIR*, 547 U.S. at 66. We think not. There is no likelihood that an observer who views the bare conduct of sending repeated electronic communication would understand any expressive message from this conduct. *See Johnson*, 491 U.S. at 404. An observer may glean, at the most, that the sender wants to send something to the receiver. The only way for an observer to know that the sender means to express anything by these acts is for the sender to explain it to them; the repeated sending of some sort of electronic communication is pure conduct that must be explained by separate speech. *See FAIR*, 547 U.S. at 66. Accordingly, the electronic harassment statute does not regulate expressive conduct. Instead, it focuses upon conduct that is not inherently expressive. If there was an intent to be expressive, the actor would have to provide separate speech accompanying and explaining the

conduct.

In sum, we hold that on its face, § 42.07(a)(7), the electronic harassment statute, proscribes non-speech conduct that does not implicate the protections of the First Amendment, although elements of speech may be employed to commit the offense.

## VIII — Conclusion: *Scott* Applies

In conclusion, in *Scott*, we did not create a new category of speech outside of the protection of the First Amendment. Instead, we concluded that § 42.07(a)(4), the telephone harassment statute, regulates non-speech conduct and therefore does not implicate the First Amendment even though words may be used in the commission of the offense. The same can be said for § 42.07(a)(7), the electronic harassment statute. On its face, § 42.07(a)(7) does not implicate and does not violate the First Amendment of the United States Constitution. Whether § 42.07(a)(4) or (a)(7) could implicate the First Amendment on an as-applied basis, and, if so, whether such application is permissible under the appropriate standard of scrutiny are questions for another day.[29]

The judgment of the court of appeals is affirmed.

Delivered: April 6, 2022
Publish

---

[29] *See O'Brien*, 391 U.S. at 376–77 (providing test for regulations that on their face do not suppress free expression that nevertheless cause an incidental limitation on speech where speech and non-speech elements have been combined into the same course of conduct).